**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MARYLAND**
**CIVIL DIVISION**

| | |
|---|---|
| **Tayona Lena Victoria Walker, Individually, and as the Personal Representative of the Estate of Donta Walker,** 29 Fennington Circle Owings Mills, MD 21117 | |
| | Civil Action No. <u>25-3447</u> |
| **and** | |
| **Donta Taylor,** 5937 Radecke Ave, Apt F Baltimore, MD 21206 | |
| **Plaintiffs,** | |
| **and** | |
| **To the Use of Martha Taylor,** 607 Springfield Ave Baltimore, MD 21212 | |
| **and** | |
| **To the Use of Edward Walker,** 8709 Groffs Mill Dr, Unit 8709 Owings Mills, MD 21117 | |
| **Use Plaintiffs,** | |
| *v.* | |
| **Maryland Department of Public Safety and Correctional Services** *Serve on Carolyn J. Scruggs, Secretary* 6852 4th Street. Jessup, MD 20794 | |
| *Anthony G. Brown,* Attorney General St. Paul Plaza - 19th Floor 200 St. Paul Place Baltimore, Maryland 21202 | |
| **and** | |
| **YESCARE CORP.** 1999 Bryan St. Suite 900 | |

Dallas, Texas 75201
*Serve on* CT Corporation System
1999 Bryan St. Suite 900
Dallas, Texas 75201

**CHS TX, Inc.**
**d/b/a YesCare**
205 Powell Place, Suite 104
Brentwood, TN 37027
*Serve on: The Corporation Trust Incorporated*
2405 York Road, Suite 201
Lutherville-Timonium, MD 21093

**and**

**YesCare MD, LLC**
**d/b/a YesCare**
7600 Kindler Overlook Drive
Laurel, MD 20723
*Serve on: Bethel Asres*
7600 Kindler Overlook Drive
Laurel, MD 20723

**and**

**Hamid Kiabayan, MD**, Maryland Correctional
Institution - Jessup Facility
6655 Sykesville Rd
Sykesville, MD 21784

**and**

**Correct Rx Pharmacy Services, Inc.**
1352 Charwood Road, Suite C
Hanover, MD 21076
Serve on: Resident Agent, Ellen H. Yankellow
1352 Charwood Road, Suite C
Hanover, MD 21076

**and**

**Robert Dean,** Warden Maryland
Correctional Institution - Jessup Facility
6404 Danville Ct
Rockville, MD 20852

**and**

**Geneva Holland,** Assistant Warden Maryland
Correctional Institution - Jessup Facility
7610 Knotting Hill Ln L
Port Tobacco, MD 20677

**and**

**Keith D. Dickens,** Chief of Security Maryland
Correctional Institution - Jessup Facility
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Sharon Baucom,** Chief Medical Director
Maryland Correctional
Institution - Jessup Facility
8609 Windsor Mill Rd
Windsor Mill, MD 21244

**and**

**Joseph Ezeh,** Director of Inmate Healthcare
Administration Maryland Correctional
Institution - Jessup Facility
115 Glenmoore Ave
Cockeysville, MD 21030

**and**

**Adaora Odunze,** Director of Nursing Services,
Maryland Correctional Institution - Jessup Facility
305 Sophia Ct Apt A
Pikesville, MD 21208

**and**

**Olayinka Ukim,** Associate Chief of Medicine,
Maryland Correctional Institution - Jessup Facility
6405 Steel Flower Path
Columbia, MD 21045

**and**

**Kasahun Temesgen,** Director of Inmate Health
Care, Maryland Department of Public Safety and
Correctional Services
4007 Cotton Tree Ln
Burtonsville, MD 20866

**and**

**Nicole Hargraves,** Health Services Administrator,
Maryland Correctional Institution - Jessup Facility
9668 Horsham Dr
Laurel, MD 20723

**and**

**Sabastine Offorji, RN**, Maryland Correctional
Institution - Jessup Facility
9311 Tulsemere Rd
Randallstown, MD 21133

**and**

**Wasiu Irekoya,** Correctional Officer II, Maryland
Correctional Institution - Jessup Facility
12800 Old Chapel Rd
Bowie, MD 20720

**and**

**Waheed Jimoh,** Correctional Officer II, Maryland
Correctional Institution - Jessup Facility
8900 Merrill Ln Apt 303
Laurel, MD 20708

**and**

**Jaques Kemegne,** Correctional Officer II,
Maryland Correctional Institution - Jessup Facility
6823 Nashville Rd
Lanham, MD 20706

**and**

**Kevin Hight,** Correctional Officer, Maryland
Correctional Institution - Jessup Facility
5 Silverwood Cir Apt 11

| Annapolis, MD 21403 | |
|---|---|
| **Defendants.** | |

## COMPLAINT AND JURY DEMAND

Plaintiffs, Tayona Lena Victoria Walker, individually, and as the Personal Representative of the Estate of Donta Walker, and Donta Taylor, by and through undersigned counsel, and Use Plaintiffs Martha Taylor, and Edward Walker, file this suit against Defendants Maryland Department of Public Safety and Correctional Services, YesCare Corporation, CHS TX, Inc., d/b/a YesCare, YesCare MD, LLC, d/b/a YesCare, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, (*collectively* "Defendants") and state the following in support thereof:

## <u>THE PARTIES</u>

1.      Plaintiff, Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, brings this action pursuant to applicable Maryland law. At all times relevant to this Complaint, Donta Walker ("Mr. Walker" or the "Decedent") was a prison inmate of the State of Maryland in the custody of the Maryland Department of Public Safety and Correctional Services at the Maryland Correctional Institution - Jessup, located at 7803 House of Correction Rd Jessup, MD 20794 (the "Jessup Facility"). Tayona Lena Victoria Walker was appointed Personal Representative of the Estate of Donta Walker on or about October 5th, 2023.

2.      Plaintiff Tayona Lena Victoria Walker (*hereinafter*, "Plaintiff Tayona Walker"), is Mr. Walker's daughter and a lawful beneficiary under Maryland Law, and is and was, at all times relevant, a resident of Baltimore County, Maryland.

3.      Plaintiff Donta Taylor (*hereinafter*, "Plaintiff Donta Taylor"), is Mr. Walker's son and a lawful beneficiary under Maryland Law, and is and was, at all times relevant, a resident of Baltimore County, Maryland.

4.      Plaintiff Edward Walker (*hereinafter*, "Use Plaintiff Edward Walker"), is Mr. Walker's father and a lawful beneficiary under Maryland Law. The party bringing this action has conducted a good faith and reasonably diligent effort to identify, locate, and name Mr. Edward Walker as a Use Plaintiff in this action and is contemporaneously, with the filing of this action, providing notice pursuant to the requirements of Maryland law.

5.      Plaintiff Martha Taylor (*hereinafter*, "Use Plaintiff Martha Taylor"), is Mr. Walker's mother and a lawful beneficiary under Maryland Law. The party bringing this action has conducted a good faith and reasonably diligent effort to identify, locate, and name Ms. Taylor as a Use Plaintiff in this action and is contemporaneously, with the filing of this action, providing notice pursuant to the requirements of Maryland law.

6.      Defendant Maryland Department of Public Safety and Correctional Services ("Maryland Correctional Services" or "DPSCS") is an agency of the Maryland State Government and operates state correctional facilities throughout Maryland, including the Jessup Facility and its infirmary, where Mr. Walker should have received adequate medical care in October, 2022. DPSCS was, at all times relevant, responsible for the housing, safety, and constitutional rights of incarcerated individuals within its facilities, including Mr. Walker. Additionally, DPSCS was tasked with the supervision, command, and oversight of staff members working at the facility, as well as ensuring the provision of adequate medical care, either directly or through contracted healthcare providers.

7.    Upon information and belief, at all times relevant, Defendant YesCare Corporation (Defendant "YesCare Corp") is a healthcare provider contracted by the Defendant DPSCS and, at all relevant times, responsible for managing the infirmary at the Jessup Facility on or about October 18, 2022. Further, it is an entity incorporated under the laws of Texas, with its principal office located in Brentwood, Tennessee.

8.    Upon information and belief, Defendant CHS TX, Inc., d/b/a YesCare (Defendant "YesCare TX"), is a healthcare provider contracted by the Defendant DPSCS and, at all relevant times, responsible for managing the infirmary at the Jessup Facility on or about October 18, 2022. Further, it is an entity incorporated under the laws of Texas, with its principal office located in Brentwood, Tennessee.

9.    Upon information and belief, Defendant YesCare MD, LLC, d/b/a YesCare (Defendant "YesCare MD"), is a domestic corporation with its principal office in the State of Maryland. Defendant YesCare MD was contracted to provide healthcare services to the inmates at the Jessup Facility.

10.    Upon information and belief, Defendant Hamid Kiabayan, M.D. ("Defendant Kiabayan"), was, at all times relevant, a physician at the Maryland Correctional Institution - Jessup Facility and provided prescriptions to Mr. Walker. Defendant Kiabayan, at all times relevant herein, was employed by YesCare Corporation, YesCare TX and/or YesCare MD.

11.    Upon information and belief, Defendant Robert Dean (Defendant "Dean") was, at all times relevant, the Warden of Maryland Correctional Institution - Jessup Facility. Defendant Dean, at all times relevant, was employed by the DPSCS as the Warden of the Jessup Facility.

12.    Upon information and belief, Defendant Geneva Holland ("Defendant Holland") was, at all times relevant, the Assistant Warden of the Maryland Correctional Institution - Jessup

Facility. Defendant Holland, at all times relevant herein, was employed by the DPSCS as the Assistant Warden of the Jessup Facility.

13.    Upon information and belief, Defendant Keith D. Dickens (Defendant "Dickens") was, at all times relevant, Chief of Security of Maryland Correctional Institution - Jessup Facility. Defendant Dickens, at all times relevant herein, was employed by the DPSCS as the Chief of Security of the Jessup Facility.

14.    Upon information and belief, Defendant Sharon Baucom (Defendant "Baucom"), was, at all times relevant, Chief Medical Director of Maryland Correctional Institution - Jessup Facility. Defendant Sharon Baucom, at all times relevant herein, was employed by DPSCS as the Chief Medical Director of the Jessup Facility.

15.    Upon information and belief, Defendant Joseph Ezeh (Defendant "Ezeh") was, at all times relevant, Director of Inmate Healthcare Administration of Maryland Correctional Institution - Jessup Facility. Defendant Ezeh, at all times relevant herein, was employed by the State of Maryland as the Director of Inmate Healthcare Administration of the Jessup Facility.

16.    Upon information and belief, Defendant Adaora Odunze (Defendant "Odunze"), was, at all times relevant, Director of Nursing Services of Maryland Correctional Institution - Jessup Facility. Defendant Odunze, at all times relevant herein, was employed by the DPSCS as the Director of Nursing Services of the Jessup Facility.

17.    Upon information and belief Defendant Olayinka Ukim (Defendant "Ukim"), was, at all times relevant, Associate Chief of Medicine (ACOM) of Maryland Correctional Institution - Jessup Facility. Defendant Ukim, at all times relevant herein, was employed by the DPSCS as ACOM at the Jessup Facility.

18.     Upon information and belief, Defendant Dr. Kasahun Temesgen, MD, FACP (Defendant "Temesgen"), was, at all times relevant, the Regional Medical Director - Jessup Region. Defendant Temesgen, at all times relevant herein, was employed by the DPSCS as the Regional Medical Director - Jessup Region.

19.     Upon information and belief, Defendant Nicole Hargraves (Defendant "Hargraves"), was, at all times relevant, Health Services Administrator of Maryland Correctional Institution - Jessup Facility. Defendant Hargraves, at all times relevant herein, was employed by YesCare Corporation, YesCare TX and/or YesCare MD.

20.     Upon information and belief, Defendant Correct Rx Pharmacy Services, Inc. (Defendant "Correct Rx"), is a domestic entity with its principal office in the State of Maryland, with its principal office located in Hanover, Maryland. Further, it was at all times relevant a healthcare provider contracted by the Defendant DPSCS and responsible for supplying medications prescribed to Mr. Walker.

21.     Upon information and belief, Defendant Wasiu Irekoya (Defendant "Irekoya") was, at all times relevant, a Correctional Officer II assigned to the Maryland Correctional Institution – Jessup. Defendant Irekoya was employed by the DPSCS and, on the morning of October 18, 2022, personally escorted Mr. Walker to the medical unit and participated in CPR after Mr. Walker collapsed.

22.     Upon information and belief, Defendant Waheed Jimoh ("Defendant Jimoh"), was, at all times relevant, a Correctional Officer II assigned to the Maryland Correctional Institution – Jessup. Defendant Jimoh was employed by the DPSCS and, on the morning of October 18, 2022, personally participated in CPR after Mr. Walker collapsed.

23.    Upon information and belief, Defendant Jaques Kemegne (Defendant "Kemegne"), was, at all times relevant, a Correctional Officer II assigned to the Maryland Correctional Institution – Jessup. Defendant Kemegne was employed by the DPSCS and, on the morning of October 18, 2022, personally participated in CPR after Mr. Walker collapsed.

24.    Upon information and belief, Defendant Kevin Hight (hereinafter "Defendant Hight") was, at all times relevant, a Correctional Officer assigned to the Maryland Correctional Institution – Jessup. Defendant Hight was employed by the DPSCS and was responsible for authoring the Serious Incident Report (SIR) related to Mr. Walker's death.

25.    Upon information and belief, Defendant Sabastine Offorji, RN (Defendant "Offorji"), was, at all times relevant, a nurse practitioner assigned to the infirmary at the Jessup Facility where Mr. Walker was being held as a prisoner of the DPSCS. Defendant Offorji treated Mr. Walker during his final medical presentation, failed to document vital signs, prematurely discharged him prior to his collapse, and later performed CPR on Mr. Walker following the medical emergency. Defendant Offorji, at all times relevant herein, was employed by YesCare Corporation, YesCare TX and/or YesCare MD.

26.    Upon information and belief, Defendants were responsible for the operation of the infirmary at the Jessup Facility in a safe and proficient manner, with a duty to exercise reasonable care to protect the inmates of that institution, and provide proper and timely medical care, including Mr. Walker, and each Defendant is sued individually and in his/her official capacity. At all times mentioned in this Complaint, each Defendant acted under the color of State Law.

## **JURISDICTION AND VENUE**

27.    This matter arises from a personal injury and civil rights action seeking to redress the deprivation, under color of State law, of rights secured by the Constitution of the United States;

42 U.S.C. §§ 1983 and 1988; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Maryland Declaration of Rights; and Maryland common law. The claims involve deliberate indifference to serious medical needs, disability-based discrimination, and negligence resulting in the wrongful death of Mr. Donta Walker on October 18, 2022, at the Jessup Facility in Anne Arundel County, Maryland.

28.    Venue in this action properly lies in this court pursuant to 28 U.S.C. 1391 (b)(2) because the acts and omissions complained of occurred in the State of Maryland.

29.    Subject matter jurisdiction of this Court is involved pursuant to 28 U.S.C. § 1331 and 1343(a)(3), as this action arises under the Constitution and laws of the United States, and supplemental jurisdiction is proper under 28 U.S.C. § 1367(a).

30.    Personal jurisdiction and venue of this Court is invoked as Defendants caused tortious injury in the State of Maryland.

31.    To the extent 42 U.S.C. § 1997e(a) applies, administrative remedies were not available to Mr. Walker prior to his death due to the emergent and fatal nature of his medical condition, institutional delays, and the failure of medical personnel to appropriately respond to his urgent needs. In *Green v. Dean*, No. 1:23-cv-01141-ELH, 2024 U.S. Dist. LEXIS 155169 (D. Md. Aug. 22, 2024), the United States District Court for the District of Maryland dismissed the Prison Litigation Reform Act exhaustion requirement where a prisoner at the Maryland Correctional Institution – Jessup died amid an unresolved medical emergency, holding that administrative remedies were not "available" under *Ross v. Blake, 578 U.S. 633, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016)*. Mr. Walker's circumstances are materially similar. He submitted repeated sick call requests and directly sought emergency treatment from the Jessup infirmary for respiratory distress. Despite these urgent efforts, medical staff failed to provide appropriate care and returned

him to general housing, where he collapsed and died shortly thereafter. Because the institutional medical and grievance systems were incapable of delivering timely relief under these emergent circumstances, the administrative remedy process was functionally useless and thus unavailable as a matter of law. See also *Moore v. Bennette*, 517 F.3d 717 at 725 (4th Cir. 2008).

32.    The Plaintiff hereby demands a jury trial on the allegations below.

## FACTS COMMON TO ALL COUNTS

33.    At all relevant times, before and at the time of his death, Mr. Walker was incarcerated at the Jessup Facility, under the control of Defendant DPSCS. Upon information and belief, the infirmary at the Jessup Facility was managed and operated by Defendants YesCare Corporation, CHS TX, Inc. d/b/a YesCare and YesCare MD, LLC (*collectively*, "YesCare"), which were responsible for providing medical care to incarcerated individuals.

34.    Upon information and belief, on or about October 18, 2022, Mr. Walker began complaining of difficulty breathing. Recognizing the symptoms as an asthma attack, Mr. Walker sought medical assistance three separate times from the infirmary operated by YesCare. Despite Mr. Walker's repeated pleas for treatment and urgent medical intervention, medical staff failed to provide appropriate medical care or treatment and instead dismissed Mr. Walker's distress.

35.    Upon information and belief, on or about October 18, 2022, Mr. Walker explicitly begged medical staff to transfer him to a hospital for appropriate treatment, yet YesCare's medical staff refused his requests and denied him access to critical and life-saving medical care.

36.    As a direct and proximate result of Defendants' deliberate indifference, negligence, and failure to provide timely and necessary medical care, Mr. Walker suffered fatal respiratory distress and passed away on October 18, 2022, within the custody and control of Defendant DPSCS at the Jessup Facility.

37.     Upon information and belief, YesCare and its agents, employees, and/or contractors, including the medical staff assigned to the infirmary at the Jessup Facility, had a legal duty to provide proper and timely medical care to incarcerated individuals, including Mr. Walker. Despite this duty, Defendants negligently, recklessly, and unlawfully failed to provide the necessary treatment, which directly contributed to Mr. Walker's wrongful and preventable death.

38.     Upon information and belief, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, and Adaora Odunze, in their respective official and individual capacities, were responsible for the administrative management and oversight of the Jessup Facility. Their failure to ensure compliance with medical care policies and protocols, as well as their failure to intervene in Mr. Walker's medical crisis, further contributed to Mr. Walker's untimely and tragic death.

39.     Mr. Walker's death was entirely preventable and was caused by Defendants' systemic failure to provide constitutionally adequate medical care, as well as their gross negligence and deliberate indifference to Mr. Walker's serious medical needs, including their failure to timely diagnose, treat, and provide necessary emergency intervention for Mr. Walker's worsening respiratory distress.

40.     Upon information and belief, Defendants failed to document vital signs, monitor respiratory function, or conduct peak flow measurements during Mr. Walker's acute asthma exacerbation on October 18, 2022. Despite known risks and patient requests, he was returned to his cell, where he collapsed and died less than 30 minutes later.

41.     Upon information and belief, YesCare was contractually obligated to maintain chronic care management for individuals with asthma, including medication monitoring, refill

access, and emergency escalation protocols. Internal death review documents reveal repeated failures in all three areas.

42.     Upon information and belief, Mr. Walker had not received a refill of his controller inhaler since June 29, 2022. YesCare staff failed to follow up on sick call slips submitted in July and September 2022, leading to an avoidable medication lapse.

43.     Upon information and belief, Defendant Kiabayan, a treating physician at the Jessup Facility and an agent, employee, and/or contractor of YesCare, personally evaluated Mr. Walker during chronic-care or sick-call visits in which Mr. Walker's asthma diagnosis and inhaler use were documented. Facility medical records would show that Dr. Kiabayan entered or renewed prescriptions for Albuterol and other respiratory medications, but failed to monitor refill compliance or follow up when pharmacy logs showed lapses. As the physician responsible for Mr. Walker's treatment plan, Dr. Kiabayan was required to review chronic-care charts and ensure continuity of medication for detainees with serious, recurring conditions. Despite Mr. Walker's documented shortness of breath and repeated medication requests, Dr. Kiabayan did not issue an emergency refill order, schedule a timely reassessment, or escalate the case for higher-level intervention. Therefore, Dr. Kiabayan, aware of Mr. Walker's ongoing asthma and medication lapse, consciously disregarded a substantial risk of serious harm by failing to act to prevent a foreseeable respiratory crisis.

44.     Upon information and belief, Defendant Hargraves, as Health Services Administrator at the Jessup Facility and an agent or employee of YesCare, was responsible for coordinating medical staffing levels, approving triage protocols, and overseeing infirmary operations to ensure timely response to inmate medical emergencies. As part of those duties, Defendant Hargraves received or had access to internal reports and staffing logs showing repeated

gaps in nursing coverage and delayed medication rounds during the period preceding Mr. Walker's death. Facility procedure required the Health Services Administrator to review incident logs and sick-call backlogs identifying cases—like Mr. Walker's—where inmates with chronic respiratory illness were not seen or refill medications were not provided within required timeframes. Despite these indicators of systemic delay and the known risk to inmates with respiratory conditions, Defendant Hargraves failed to initiate corrective measures, such as assigning emergency coverage, escalating staffing shortages to corporate leadership, or ensuring that Mr. Walker's medication lapse was addressed. Defendant Hargraves knew or should have known that lapses in infirmary triage and medication continuity created a substantial risk of harm to detainees with asthma, including Mr. Walker, and consciously disregarded that risk by failing to intervene.

45.     Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as the senior medical officers and administrators at the Jessup Facility, exercised direct responsibility for reviewing chronic-care rosters, authorizing medication refills, and approving emergency transfers for detainees with known respiratory conditions, including asthma. As a result, Defendants Baucom, Ezeh, Ukim, and Temesgen:

a.   Received or had access to Mr. Walker's chronic-care chart showing repeated asthma diagnoses and the expiration of his inhaler prescription, yet failed to renew or ensure a refill order was entered

b.   Oversaw or signed off on periodic chronic-care audits and utilization-review meetings where Mr. Walker's non-compliance alerts or missed appointments would have been flagged, but took no corrective action.

c.    Approved or enforced protocols limiting emergency off-site transfers, thereby creating or maintaining a policy that delayed Mr. Walker's escalation to a hospital when he presented in acute respiratory distress.

d.    Received incident or sick-call summaries documenting Mr. Walker's complaints of shortness of breath and medication lapse during their shift coverage, but failed to direct staff to provide inhaler replacement or physician evaluation.

46.    Upon information and belief, at all times relevant hereto, Defendant Correct Rx and its actual and/or apparent agents, servants, employees, and contractors, served as the exclusive institutional pharmacy responsible for the timely receipt, verification, filling, and dispensing of prescription medications for inmates housed at the Jessup Facility, including medications prescribed to Mr. Walker for the management of chronic asthma. As part of its contractual and professional obligations to the DPSCS, Defendant Correct Rx was required to maintain accurate medication logs, monitor refill intervals, identify unfilled or expired prescriptions, and promptly communicate with treating clinicians and facility medical staff regarding any interruption in medication supply or lapse in continuity of care.

47.    Defendant Correct Rx and their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the timely and accurate dispensing of prescribed medications and continuity of medical care.

48.    Defendant Correct Rx, and its actual and/or apparent agents, servants, employees, and contractors, had a duty to Mr. Walker to exercise that degree of skill, judgment, and care expected of reasonably competent pharmacy and healthcare providers practicing under the same or similar circumstances as those involving Mr. Walker. This duty included ensuring the timely

receipt, filling, and dispensing of prescribed medications; maintaining accurate medication records; verifying prescriptions; communicating with medical staff regarding continuity of care; and taking all reasonable precautions to prevent unnecessary harm or death to Mr. Walker resulting from medication errors, delays, or omissions in treatment.

49.     Upon information and belief, Defendant Correct Rx, along with its actual and/or apparent agents, servants, employees, and contractors, failed to adhere to the accepted standards of pharmacy and healthcare practice. Specifically, Defendant Correct Rx failed to: (a) maintain accurate and up-to-date medication records for Mr. Walker; (b) identify and act upon refill lapses in his prescribed controller inhaler (Alvesco) and rescue inhaler (Albuterol); (c) notify the prescribing provider or YesCare medical staff when refill authorizations or delivery delays occurred; and (d) implement safeguards to ensure that critical chronic-care medications were available and dispensed to Mr. Walker without interruption.

50.     These duties existed independently of the prescribing decisions made by YesCare clinicians. Defendant Correct Rx's failure to monitor and communicate medication lapses, to reconcile active prescriptions, and to alert medical personnel to a known interruption of an essential asthma medication constituted a breach of its own professional obligations, not a mere difference of medical opinion or reliance on another provider's order. As a foreseeable and direct result of Defendant Correct Rx's acts and omissions, Mr. Walker experienced a preventable medication gap that precipitated his respiratory distress and ultimate death from respiratory failure.

51.     Defendant Correct Rx's above-described acts and omissions were committed by its agents, servants, staff, employees, contractors, and/or administrators who were acting within the course and scope of their agency, employment, and/or contractual relationship, and in furtherance of the business and interests of Defendant Correct Rx. Accordingly, Defendant Correct Rx is

vicariously liable for the negligent acts and omissions of its employees, staff, agents, servants, and/or contractors under the doctrine of *respondeat superior*.

52.     Upon information and belief, Warden Dean and other high-level supervisory officials were notified immediately after Mr. Walker's death, indicating their awareness of serious breakdowns in institutional protocol.

53.     Upon information and belief, Defendants Dean, Holland, and Dickens, serving respectively as Warden, Assistant Warden, and Chief of Security at the Jessup Facility, exercised direct supervisory authority over correctional operations, including coordination with medical staff during inmate medical emergencies. Facility policy required these Defendants to review incident reports, emergency response logs, and shift commander summaries documenting medical delays and inmate health complaints. Prior to Mr. Walker's death, they received or had access to reports of repeated medical response delays, inadequate emergency escorts, and complaints from custody staff about unavailability of medical personnel after hours. As the senior command staff, Defendants Dean, Holland, and Dickens were obligated to initiate corrective action—including ordering immediate transport for emergent medical cases, convening administrative reviews of delayed responses, and ensuring radio communication between custody and medical units remained functional. Despite knowledge of prior asthma-related emergencies and similar incidents within the facility, they failed to implement or enforce corrective measures, allowing systemic response failures to persist. Defendant knew or should have known that breakdowns in coordination between custody and medical staff posed a serious risk to detainees with chronic respiratory conditions, and consciously disregarded that risk by failing to ensure prompt response or policy enforcement in Mr. Walker's case.

54.     Upon information and belief, Defendant Hight, as a Lieutenant and shift supervisor at the Jessup Facility, was responsible for reviewing and documenting serious medical or security incidents involving detainee health emergencies. Following Mr. Walker's collapse on October 18, 2022, Defendant Hight authored the Serious Incident Report, which required reviewing medical response timelines, officer statements, and prior housing-unit communications regarding Mr. Walker's health status. In preparing that report, Defendant Hight had access to inmate complaint logs, prior sick-call slips, and radio transmissions indicating that Mr. Walker had repeatedly reported shortness of breath and requested medical attention in the days preceding the incident. Defendant Hight also reviewed communications reflecting delays in medical escort and response coordination between custody and health staff. Despite this knowledge, Defendant Hight failed to initiate an internal review or notify supervisory command of the repeated medical lapses contributing to the emergency, instead preparing an incomplete report that omitted or minimized known deficiencies in response time and triage procedures. Defendant Hight was aware of and deliberately disregarded evidence of systemic medical-care breakdowns, and thereby contributed to the ongoing risk that led to Mr. Walker's death.

55.     Upon information and belief, the Death Review Summary identified institutional concerns including the absence of respiratory assessments, documentation gaps, and improper return of the patient to housing without proper follow-up.

56.     Upon information and belief, the peer-reviewed findings fault nursing leadership for lack of vital sign documentation and the failure to activate emergency protocols including potential Narcan administration.

57.     Upon information and belief, despite Mr. Walker's direct request for Albuterol on the night of his death, YesCare failed to escalate care or ensure continuous monitoring, instead allowing Mr. Walker to return to housing where he went into respiratory arrest.

58.     Upon information and belief, Mr. Walker's death was reviewed internally and cited with multiple violations of basic correctional healthcare standards, including the failure to assess respiratory status, incomplete triage documentation, and an unjustified return to general population during active respiratory distress.

59.     As a result of Defendants' wrongful actions and inactions, Mr. Walker endured unnecessary pain, suffering, and ultimately, an avoidable death, depriving his family of their loved one.

## MONELL LIABILITY ALLEGATIONS AGAINST DEFENDANTS YESCARE CORPORATION, CHS TX, INC. D/B/A YESCARE AND YESCARE MD, LLC (COLLECTIVELY, "YesCare") COMMON TO ALL APPLICABLE COUNTS

60.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

61.     Private/Corporate entities, like Defendant YesCare, performing public functions are considered "persons" within the meaning of 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 689 (1978). However, such entities may be held liable only for their own unconstitutional policies or customs that directly cause a deprivation of federal rights. *Monell*, 436 U.S. at 691.

62.     A corporate entity can be sued under § 1983 when the execution of its policy, custom, or established practice inflicts the constitutional injury, but it cannot be held vicariously liable on a theory of *respondeat superior*. *Id.* Accordingly, a private corporation acting under color of state law—such as a correctional healthcare contractor—may be held responsible when its own

practices, decisions, or deliberate omissions constitute the "moving force" behind a violation of constitutional rights. *Id.,* at 692.

63.     Upon information and belief, Defendant YesCare maintained policies, customs, and practices that resulted in the systemic failure to provide adequate medical treatment to inmates with chronic asthma, including:

a.      Failure to ensure timely refills of prescribed medications such as Albuterol and Alvesco inhalers, despite repeated sick-call requests and documented need;

b.      Failure to establish or enforce asthma-response protocols requiring staff to promptly evaluate and transfer inmates in respiratory distress to outside hospitals;

c.      Failure to train and supervise medical staff and correctional officers on the recognition and emergency management of respiratory distress;

d.      Deliberately delaying hospital transfers for inmates experiencing asthma attacks, which were routinely misclassified as non–life-threatening despite obvious respiratory distress; and

e.      Deliberate understaffing and inadequate medical oversight, resulting in known delays in treatment and medication access.

64.     Upon information and belief, these policies, customs, and practices were long-standing and well known to Defendant YesCare's supervisory personnel through prior inmate complaints, internal audits, and mortality reviews. Despite such notice, Defendant YesCare failed to take corrective action and continued to operate under practices that foreseeably led to serious injury and death among inmates with chronic respiratory conditions.

65.     The effects of YesCare's chronic-care and refill-tracking policies were directly manifested in Mr. Walker's case. Despite being a documented asthmatic enrolled in chronic-care

protocols, Mr. Walker's controller inhaler prescription expired on or about June 29, 2022, and no automatic renewal or continuity safeguard existed to ensure uninterrupted access to medication. Over the following months, he submitted multiple sick-call requests reporting difficulty breathing and requesting refills, yet the refill process remained inactive because no physician re-entered the order in the electronic system. As a result, Mr. Walker went nearly three months without access to his prescribed asthma medication, a gap entirely foreseeable under YesCare's existing refill policy. On October 18, 2022, Mr. Walker experienced severe respiratory distress, was returned to housing without treatment or hospital transfer, and collapsed shortly thereafter. The continuation of these deficient policies—despite known risks to chronic-care inmates—constituted a systemic disregard for the medical safety of asthmatic prisoners and was the moving force behind Mr. Walker's preventable death.

66.    Defendant YesCare's failure to train, supervise, and correct known deficiencies constitutes deliberate indifference to the serious medical needs of inmates, including Mr. Walker. The risk that such failures would result in death or serious harm was obvious and known to Defendant YesCare policymakers.

67.    Defendant YesCare's acts and omissions, carried out pursuant to its official customs and policies, directly caused the deprivation of Mr. Walker's constitutional rights to adequate medical care and protection from known, substantial risks of harm.

68.    Accordingly, YesCare is liable under *Monell* and its progeny, for maintaining policies and customs exhibiting deliberate indifference to inmates' serious medical needs, which were the moving force behind Mr. Walker's preventable death.

**COUNT I – 42 U.S.C. 1983: Deliberate Indifference to Serious Medical Needs**
**Wrongful Death Action**
**(Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, each in their individual capacity)**

69.    Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker reallege and incorporate by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further allege:

70.    In committing the acts and omissions complained of herein, Defendants YesCare Corporation, CHS TX, Inc. d/b/a YesCare and YesCare MD, LLC (*collectively*, "YesCare"), Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN acted under the color of state law to deprive Mr. Walker of his constitutionally protected rights under the Eighth Amendment to the Constitution of the United States; and of his civil rights afforded by statute, viz., 42 U.S.C. § 1983, including but not limited to his:

    a.    Right to be free from cruel and unusual punishment;

    b.    Right to receive adequate medical care for serious medical needs; and

    c.    Right to reasonable protection from known and substantial risks of harm while in custody.

71.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with

known medical need. Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, RN, who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendants Irekoya, Jimoh, and Kemegne, who personally participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights.

72.    Upon information and belief, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen, and Nicole Hargraves incurred supervisory liability under 42 U.S.C. § 1983 by having actual or constructive knowledge that their subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to Mr. Walker and other inmates suffering from serious medical conditions, including asthma. Despite this knowledge, these Defendants failed to take

corrective action, allowing systemic failures in medical care to persist at the Jessup Facility. Their response was so inadequate as to show deliberate indifference or tacit authorization of policies and practices that resulted in the failure to provide timely medical intervention, denial of necessary asthma medication, and the refusal to transfer Mr. Walker to a hospital in time to prevent his death. There exists a direct causal link between these Defendants' inaction and Mr. Walker's constitutional injury, as their failure to train, supervise, or correct known deficiencies in medical care contributed to the deliberate indifference that resulted in Mr. Walker's suffering and death.

73.     For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight are sued in their **individual capacities**, and **not as State employees in their official capacities**, thereby excluding the applicability of Eleventh Amendment immunity under the United States Constitution. As such, these Defendants are subject to liability under 42 U.S.C. § 1983 for actions taken under color of state law that deprived Mr. Walker of rights secured by the Constitution and laws of the United States.

74.     Under 42 U.S.C. § 1983 Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight can be held liable for their own personal wrongdoing and/or for supervisory actions that themselves violate the United States Constitution. Plaintiffs are **not asserting _respondeat superior_** liability but rather supervisory liability and the above Defendants' personal participation in the constitutional violation; the extent of their personal involvement is to be confirmed during discovery. Plaintiffs

are also **not asserting *respondeat superior*** liability against Defendant YesCare in relation to Defendant DPSCS.

75.    Defendants' collective and individual constitutional obligations included, but are not limited to:

a.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

b.    Ensuring the safety and security of incarcerated individuals under their supervision;

c.    Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

d.    Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

e.    Housing the Decedent in a medically appropriate unit when clinical instability was evident;

f.    Supervising and overseeing medical staff responsible for inmate healthcare (applicable to the specific Defendant mentioned in the preceding paragraphs); and

g.    Upholding Mr. Walker's aforementioned constitutional rights.

76.    The Defendants breached their non-delegable constitutional obligations and were deliberately indifferent and grossly negligent in the following ways:

a.    Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b.      Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c.      Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d.      Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e.      Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f.      Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g.      Failing to supervise and oversee medical staff responsible for inmate healthcare (applicable to the specific Defendants mentioned in the preceding paragraphs); and

h.      Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Eighth Amendment; and

i.      Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

77.     The Defendants knew of the substantial and excessive risk of serious harm to incarcerated individuals due to the denial of essential medical care, including the failure to promptly treat life-threatening medical conditions such as Mr. Walker's respiratory distress and asthma attack. Defendants were aware that delayed or denied medical intervention could lead to

27

severe injury or death and that prompt hospitalization was necessary for individuals experiencing respiratory failure.

78.     The Defendants knew of, yet disregarded, the excessive risk to Mr. Walker's health and safety arising from their failure to provide timely and adequate medical care. Defendants were aware of previous instances where inmates at Jessup Facility suffered harm due to medical neglect, yet failed to implement policies or corrective actions to prevent future occurrences. Defendants willfully and wantonly neglected their duty of care, deliberately ignored Mr. Walker's repeated pleas for emergency medical intervention, and failed to transport him to a hospital despite his worsening condition. As a result of Defendants' reckless disregard for Mr. Walker's health, he suffered preventable respiratory failure and death on October 18, 2022.

79.     As a direct and proximate result of the breach of the duties committed by Defendants, Plaintiffs, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

80.     All of Mr. Walker's injuries, damages, and losses were caused solely by the above Defendants' negligence and failure to exercise due care, with no contributory negligence on the part of the Mr. Walker.

**WHEREFORE**, Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker, demand judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD,

FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, jointly and severally, in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

### COUNT II – 42 U.S.C. 1983: Deliberate Indifference to Serious Medical Needs
**Survival Action**

**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN)**

81.     Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

82.     In committing the acts and omissions complained of herein, Defendants YesCare Corporation, CHS TX, Inc. d/b/a YesCare and YesCare MD, LLC (*collectively*, "YesCare"), Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN acted under the color of state law to deprive Mr. Walker of his constitutionally protected rights under the Eighth Amendment to the Constitution of the United States; and of his civil rights afforded by statute, viz., 42 U.S.C. § 1983, including but not limited to his:

      a.     Right to be free from cruel and unusual punishment;

      b.     Right to receive adequate medical care for serious medical needs; and

      c.     Right to reasonable protection from known and substantial risks of harm while in custody.

83.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, RN, who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendants Irekoya, Jimoh, and Kemegne, who personally participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights.

84.    Upon information and belief, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen, and

Nicole Hargraves incurred supervisory liability under 42 U.S.C. § 1983 by having actual or constructive knowledge that their subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to Mr. Walker and other inmates suffering from serious medical conditions, including asthma. Despite this knowledge, these Defendants failed to take corrective action, allowing systemic failures in medical care to persist at the Jessup Facility. Their response was so inadequate as to show deliberate indifference or tacit authorization of policies and practices that resulted in the failure to provide timely medical intervention, denial of necessary asthma medication, and the refusal to transfer Mr. Walker to a hospital in time to prevent his death. There exists a direct causal link between these Defendants' inaction and Mr. Walker's constitutional injury, as their failure to train, supervise, or correct known deficiencies in medical care contributed to the deliberate indifference that resulted in Mr. Walker's suffering and death.

85.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight are sued in their **individual capacities**, and **not as State employees in their official capacities**, thereby excluding the applicability of Eleventh Amendment immunity under the United States Constitution. As such, these Defendants are subject to liability under 42 U.S.C. § 1983 for actions taken under color of state law that deprived Mr. Walker of rights secured by the Constitution and laws of the United States.

86.    Under 42 U.S.C. § 1983 Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight can be held liable for their own personal wrongdoing and/or for supervisory actions that themselves violate the United

States Constitution. Plaintiffs are **not asserting** *respondeat superior* liability but rather supervisory liability and the above Defendants' personal participation in the constitutional violation; the extent of their personal involvement is to be confirmed during discovery. Plaintiffs are also **not asserting** *respondeat superior* liability against Defendant YesCare in relation to Defendant DPSCS.

87.    Defendants' collective and individual constitutional obligations included, but are not limited to:

    a.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

    b.    Ensuring the safety and security of incarcerated individuals under their supervision;

    c.    Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

    d.    Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

    e.    Housing the Decedent in a medically appropriate unit when clinical instability was evident;

    f.    Supervising and overseeing medical staff responsible for inmate healthcare (applicable to the specific Defendants mentioned in the preceding paragraphs); and

    g.    Upholding Mr. Walker's aforementioned constitutional rights.

88.    The Defendants breached their non-delegable constitutional obligations and were deliberately indifferent and grossly negligent in the following ways:

a.      Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b.      Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c.      Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d.      Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e.      Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f.      Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g.      Failing to supervise and oversee medical staff responsible for inmate healthcare (applicable to the specific Defendant mentioned in the preceding paragraphs); and

h.      Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Eighth Amendment;

89.    The Defendants knew of the substantial and excessive risk of serious harm to incarcerated individuals due to the denial of essential medical care, including the failure to promptly treat life-threatening medical conditions such as Mr. Walker's respiratory distress and asthma attack. Defendants were aware that delayed or denied medical intervention could lead to

severe injury or death and that prompt hospitalization was necessary for individuals experiencing respiratory failure.

90.    The Defendants knew of, yet disregarded, the excessive risk to Mr. Walker's health and safety arising from their failure to provide timely and adequate medical care. Defendants were aware of previous instances where inmates at Jessup Facility suffered harm due to medical neglect, yet failed to implement policies or corrective actions to prevent future occurrences. Defendants willfully and wantonly neglected their duty of care, deliberately ignored Mr. Walker's repeated pleas for emergency medical intervention, and failed to transport him to a hospital despite his worsening condition. As a result of Defendants' reckless disregard for Mr. Walker's health, he suffered preventable respiratory failure and death on October 18, 2022.

91.    As a direct and proximate result of the breaches of duty committed by Defendants, Plaintiff sustained damages, including but not limited to physical pain, mental anguish, medical expenses, and all damages recoverable under Maryland law, including those authorized under Md. Code, Est. & Trusts § 7-401(y), which permits a personal representative to prosecute, defend, or compromise any action that the decedent could have maintained, and Md. Code, Cts. & Jud. Proc. § 6-401(a), which provides for the survival of causes of action for the recovery of damages for injury to the person, arising out of and resulting from the death of Mr. Walker.

**WHEREFORE**, Plaintiff Tayona Lena Victoria Walker, The Personal Representative of the Estate of Donta Walker demands judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, jointly and severally, in a sum that exceeds Seventy-Five Thousand Dollars

($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

**COUNT III – 42 U.S.C. § 12132 Violation of the Americans with Disabilities Act (ADA)**
**Survival Action**
**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. Defendant Department of Public Safety and Correctional Services)**

92.    Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker ("Plaintiff"), realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

93.    Plaintiff brings this action for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., against Defendant Maryland Department of Public Safety and Correctional Services. These claims arise from Defendant DPSCS's failure to accommodate Mr. Walker's known respiratory conditions while he was incarcerated, resulting in his preventable death. Accordingly, pursuant to *United States v. Georgia*, 546 U.S. 151 (2006), sovereign immunity is abrogated, and Defendant DPSCS is subject to suit for monetary damages under Title II.

94.    Asthma is a qualifying disability under the Americans with Disabilities Act (ADA) because it substantially limits a major life activity—breathing (*42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1)(i)*). Asthma is an episodic but persistent respiratory disorder that can become life-threatening if medication is interrupted or environmental triggers are present. The ADA Amendments Act of 2008 (ADAAA) explicitly recognizes that episodic conditions, such as asthma, qualify as disabilities when they substantially limit a major life activity when active (*29 C.F.R. § 1630.2(j)(1)(viii)*). Under the ADAAA, the effects of mitigating measures such as inhalers are disregarded in determining whether an impairment substantially limits a major life activity. 42 U.S.C. § 12102(4)(E).

95.     Upon information and belief, at all relevant times, Mr. Walker suffered from chronic, clinically diagnosed asthma that repeatedly and substantially limited his ability to breathe, sleep, and engage in daily activities. His asthma was a recurring, life-threatening impairment requiring continuous medication and monitoring. Although Mr. Walker could function at baseline with controller and rescue inhalers, he remained significantly restricted in the manner and duration in which he could perform the act of breathing compared to the average person. When deprived of medication or exposed to common triggers within the correctional setting—dust, poor ventilation, physical exertion—his breathing rapidly deteriorated, leading to severe distress and ultimately death. These facts establish that his asthma substantially limited a major life activity within the meaning of 29 C.F.R. § 1630.2(j)(1)(ii).

96.     While asthma can often be controlled through consistent use of prescribed medication, Mr. Walker's condition was not effectively controlled within the correctional environment where medication was inconsistently supplied and environmental triggers, such as dust, poor air circulation, and physical exertion required during confinement, were pervasive. His reliance on medication demonstrates the severity of his impairment, not its absence.

97.     Upon information and belief, the prolonged lack of inhaler refills, coupled with confinement conditions that aggravated respiratory distress, caused his asthma to become unstable and life-threatening. Thus, even though medication might have provided partial relief when available, Mr. Walker's asthma remained a substantially limiting impairment that required ongoing accommodation under the ADA.

98.     Upon information and belief, between June 2022 and the date of his death, Mr. Walker experienced recurring shortness of breath, chest tightness, and wheezing that progressively worsened as his prescribed inhalers ran out and refills were delayed. During this period, he

submitted multiple sick-call slips reporting difficulty breathing and requesting replacement medication. These episodes reflected continuing, uncontrolled symptoms that substantially limited his ability to perform the major life activity of breathing and demonstrated that his asthma was an active and disabling condition rather than a dormant or mild impairment.

99.    Even when medicated, Mr. Walker remained substantially limited in the major life activity of breathing. Ultimately, Mr. Walker's unfortunate death due to a chronic asthma attack demonstrates that his asthma was not only active and uncontrolled but also a disabling condition that limited not just his ability to perform a major life activity, but his very ability to sustain life.

100.    While Mr. Walker had been prescribed and medicated with inhalers to mitigate his asthma, the use or lack of such inhalers—including when, how, and for how long they were or were not supplied—cannot be invoked to determine whether his asthma substantially limited a major life activity, pursuant to 42 U.S.C. § 12102(4)(E).

101.    Defendant DPSCS, as operator of the Jessup Facility, is a public entity under Title II of the ADA and is required to provide reasonable accommodations for individuals with disabilities, including incarcerated individuals with asthma (*42 U.S.C. § 12131(1)(B)*).

102.    Upon information and belief, Defendant DPSCS used criteria and methods of administration that screened out inmates with chronic respiratory disabilities from fully and equally enjoying medical services. By classifying asthma-related refill requests as routine rather than urgent, failing to ensure access to rescue inhalers during lockdowns, and requiring non-emergency sick-call procedures for acute respiratory distress, Defendant DPSCS's practices foreseeably delayed lifesaving care for inmates with asthma, effectively excluding them from participation in and benefits of the prison's adequate medical services.

103.    Defendants maintained policies and practices that predictably denied inmates with chronic respiratory disabilities equal access to essential medical care. Upon information and belief, Defendants' medication-management and refill systems relied entirely on active prescription orders without any accommodation or continuity protocol for inmates with chronic asthma whose prescriptions required uninterrupted use. As a result, when a prescribing provider failed to renew or re-enter an order in the electronic system, the inmate was automatically cut off from all asthma medication—even when the condition and treatment needs were long-established and documented. This policy placed responsibility on individual providers rather than the institution to ensure continuity of care, creating foreseeable treatment gaps for asthmatic inmates like Mr. Walker. Mr. Walker's inhalers expired in the system months before his death, and no accommodation mechanism existed to ensure uninterrupted access to life-sustaining medication despite his known chronic condition.

104.    Defendant DPSCS knew or should have known that Mr. Walker had a disability requiring reasonable accommodations.

105.    Defendant DPSCS obligations included, but are not limited to:

a.    Ensure continuity of prescribed care and to maintain a functioning medication-dispensing system so that inmates with chronic medical conditions received all prescribed and necessary medications in a timely manner. This includes verifying that prescriptions are filled, refills are available, and the inmate has physical access to the medication as medically ordered.

b.    Assess, monitor, and respond to visible signs of respiratory distress, including wheezing, gasping, or difficulty speaking, by initiating emergency medical protocols. They

were required to provide immediate clinical evaluation, administer emergency treatment, and escalate care when symptoms indicated a potentially life-threatening condition.

c.      Recognize when an inmate's condition exceeded the treatment capacity of the correctional infirmary and to arrange prompt transfer to an outside hospital. Correctional healthcare providers are obligated to activate emergency transport protocols when clinical indicators (such as respiratory failure or unresponsiveness) suggest imminent danger to life.

d.      Adopt, implement, and monitor medical policies and procedures to prevent foreseeable harm from chronic conditions such as asthma. This includes ensuring regular asthma clinics, chronic care monitoring, medication refill tracking, and emergency response protocols. The failure to enforce such policies constitutes deliberate indifference at the administrative level.

e.      Adequately train both custody and medical staff in recognizing symptoms of respiratory distress and responding in accordance with established emergency medical standards. Training obligations include ensuring staff know when to summon medical assistance, when to initiate CPR or emergency calls, and how to prevent delays in care for inmates with known respiratory vulnerabilities.

106.    Defendants breached their obligations in the following ways:

a.      Failing to provide Mr. Walker access to necessary asthma medication (e.g., inhalers, nebulizers, or corticosteroids);

b.      Failing to respond appropriately to Mr. Walker's worsening respiratory distress, which constituted an urgent medical condition;

c.     Failing to transfer Mr. Walker to a hospital in a timely manner, despite clear indications of a life-threatening asthma exacerbation;

d.     Failing to implement or enforce policies to ensure proper treatment for inmates with asthma, despite knowing the risks of untreated asthma attacks; and

e.     Failing to train correctional and medical staff on how to recognize and respond to respiratory distress in individuals with asthma.

107.     As a direct and proximate result of Defendant DPSCS's discriminatory failure to provide reasonable accommodations, Mr. Walker suffered severe respiratory distress, preventable suffering, and ultimately death.

108.     The failure to provide timely refills of both Albuterol and Alvesco inhalers, along with a lack of follow-up after submitted sick calls, constitutes a failure to reasonably accommodate Mr. Walker's known disability. The prison's sick call system did not ensure adherence to asthma protocols, and no affirmative steps were taken to confirm medication availability or patient understanding, in violation of 42 U.S.C. §12132 and 29 U.S.C. §794.

109.     Moreover, under 28 C.F.R. § 35.130(b)(7), a public entity is required to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability. Defendant DPSCS's failure to modify their practices—such as denying timely access to rescue inhalers, failing to provide continuous monitoring for asthmatic inmates in distress, and refusing to implement hospital referral protocols—constitutes an actionable violation independent of their denial of medical care. Rather than constituting mere inadequate treatment or medical negligence, these failures reflect a systemic refusal to make reasonable accommodations for individuals with asthma, in direct contravention of Defendants' obligations under Title II of the ADA.

110. As a direct and proximate result of Defendant DPSCS's actions and omissions, Mr. Walker suffered a severe asthma attack that ultimately resulted in his death.

111. In summary, as an incarcerated person within DPSCS custody at the Jessup Facility, Mr. Walker was a qualified individual with a disability, entitled to participate in and receive the benefits of Defendant DPSCS's medical services, programs, and activities. 28 C.F.R. § 42.502. Defendant DPSCS discriminated against Mr. Walker on the basis of his chronic asthma by (a) failing to provide timely access to prescribed inhalers; (b) failing to respond to visible respiratory distress; (c) failing to train staff to identify and respond to asthma-related emergencies; and (d) failing to modify policies governing medication refills and hospital transfers to accommodate inmates with respiratory disabilities. These acts and omissions denied Mr. Walker the benefits of medical care available to other incarcerated individuals and constituted discrimination by reason of his disability, in violation of 42 U.S.C. §12132 and 29 U.S.C. §794(a).

**WHEREFORE**, Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, demands judgment against Defendant Department of Public Safety and Correctional Services, jointly and severally, for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and such further relief as this Court deems necessary and just.

**COUNT IV – 42 U.S.C. § 12132 Violation of the Americans with Disabilities Act (ADA)**
**Wrongful Death**
**(Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker v. Defendant Department of Public Safety and Correctional Services)**

112. Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker ("Plaintiffs"), reallege and incorporate by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further allege:

113.    Plaintiffs bring this action for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., against Defendant Maryland Department of Public Safety and Correctional Services. These claims arise from Defendant DPSCS's failure to accommodate Mr. Walker's known respiratory conditions while he was incarcerated, resulting in his preventable death. Accordingly, pursuant to *United States v. Georgia*, 546 U.S. 151 (2006), sovereign immunity is abrogated, and Defendant DPSCS is subject to suit for monetary damages under Title II.

114.    Asthma is a qualifying disability under the Americans with Disabilities Act (ADA) because it substantially limits a major life activity—breathing (*42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1)(i)*). Asthma is an episodic but persistent respiratory disorder that can become life-threatening if medication is interrupted or environmental triggers are present. The ADA Amendments Act of 2008 (ADAAA) explicitly recognizes that episodic conditions, such as asthma, qualify as disabilities when they substantially limit a major life activity when active (*29 C.F.R. § 1630.2(j)(1)(viii)*). Under the ADAAA, the effects of mitigating measures such as inhalers are disregarded in determining whether an impairment substantially limits a major life activity. 42 U.S.C. § 12102(4)(E).

115.    Upon information and belief, at all relevant times, Mr. Walker suffered from chronic, clinically diagnosed asthma that repeatedly and substantially limited his ability to breathe, sleep, and engage in daily activities. His asthma was a recurring, life-threatening impairment requiring continuous medication and monitoring. Although Mr. Walker could function at baseline with controller and rescue inhalers, he remained significantly restricted in the manner and duration in which he could perform the act of breathing compared to the average person. When deprived of medication or exposed to common triggers within the correctional setting—dust, poor ventilation,

physical exertion—his breathing rapidly deteriorated, leading to severe distress and ultimately death. These facts establish that his asthma substantially limited a major life activity within the meaning of 29 C.F.R. § 1630.2(j)(1)(ii).

116.    While asthma can often be controlled through consistent use of prescribed medication, Mr. Walker's condition was not effectively controlled within the correctional environment where medication was inconsistently supplied and environmental triggers, such as dust, poor air circulation, and physical exertion required during confinement, were pervasive. His reliance on medication demonstrates the severity of his impairment, not its absence.

117.    Upon information and belief, the prolonged lack of inhaler refills, coupled with confinement conditions that aggravated respiratory distress, caused his asthma to become unstable and life-threatening. Thus, even though medication might have provided partial relief when available, Mr. Walker's asthma remained a substantially limiting impairment that required ongoing accommodation under the ADA.

118.    Upon information and belief, between June 2022 and the date of his death, Mr. Walker experienced recurring shortness of breath, chest tightness, and wheezing that progressively worsened as his prescribed inhalers ran out and refills were delayed. During this period, he submitted multiple sick-call slips reporting difficulty breathing and requesting replacement medication. These episodes reflected continuing, uncontrolled symptoms that substantially limited his ability to perform the major life activity of breathing and demonstrated that his asthma was an active and disabling condition rather than a dormant or mild impairment.

119.    Even when medicated, Mr. Walker remained substantially limited in the major life activity of breathing. Ultimately, Mr. Walker's unfortunate death due to a chronic asthma attack

demonstrates that his asthma was not only active and uncontrolled but also a disabling condition that limited not just his ability to perform a major life activity, but his very ability to sustain life.

120.    While Mr. Walker had been prescribed and medicated with inhalers to mitigate his asthma, the use or lack of such inhalers—including when, how, and for how long they were or were not supplied—cannot be invoked to determine whether his asthma substantially limited a major life activity, pursuant to 42 U.S.C. § 12102(4)(E).

121.    Defendant DPSCS, as operator of the Jessup Facility, is a public entity under Title II of the ADA and is required to provide reasonable accommodations for individuals with disabilities, including incarcerated individuals with asthma (*42 U.S.C. § 12131(1)(B)*).

122.    Upon information and belief, Defendant DPSCS used criteria and methods of administration that screened out inmates with chronic respiratory disabilities from fully and equally enjoying medical services. By classifying asthma-related refill requests as routine rather than urgent, failing to ensure access to rescue inhalers during lockdowns, and requiring non-emergency sick-call procedures for acute respiratory distress, Defendant DPSCS's practices foreseeably delayed lifesaving care for inmates with asthma, effectively excluding them from participation in and benefits of the prison's adequate medical services.

123.    Defendants maintained policies and practices that predictably denied inmates with chronic respiratory disabilities equal access to essential medical care. Upon information and belief, Defendants' medication-management and refill systems relied entirely on active prescription orders without any accommodation or continuity protocol for inmates with chronic asthma whose prescriptions required uninterrupted use. As a result, when a prescribing provider failed to renew or re-enter an order in the electronic system, the inmate was automatically cut off from all asthma medication—even when the condition and treatment needs were long-established and documented.

This policy placed responsibility on individual providers rather than the institution to ensure continuity of care, creating foreseeable treatment gaps for asthmatic inmates like Mr. Walker. Mr. Walker's inhalers expired in the system months before his death, and no accommodation mechanism existed to ensure uninterrupted access to life-sustaining medication despite his known chronic condition.

124.    Defendant DPSCS knew or should have known that Mr. Walker had a disability requiring reasonable accommodations.

125.    Defendant DPSCS obligations included, but are not limited to:

a.    Ensure continuity of prescribed care and to maintain a functioning medication-dispensing system so that inmates with chronic medical conditions received all prescribed and necessary medications in a timely manner. This includes verifying that prescriptions are filled, refills are available, and the inmate has physical access to the medication as medically ordered.

b.    Assess, monitor, and respond to visible signs of respiratory distress, including wheezing, gasping, or difficulty speaking, by initiating emergency medical protocols. They were required to provide immediate clinical evaluation, administer emergency treatment, and escalate care when symptoms indicated a potentially life-threatening condition.

c.    Recognize when an inmate's condition exceeded the treatment capacity of the correctional infirmary and to arrange prompt transfer to an outside hospital. Correctional healthcare providers are obligated to activate emergency transport protocols when clinical indicators (such as respiratory failure or unresponsiveness) suggest imminent danger to life.

d.      Adopt, implement, and monitor medical policies and procedures to prevent foreseeable harm from chronic conditions such as asthma. This includes ensuring regular asthma clinics, chronic care monitoring, medication refill tracking, and emergency response protocols. The failure to enforce such policies constitutes deliberate indifference at the administrative level.

e.      Adequately train both custody and medical staff in recognizing symptoms of respiratory distress and responding in accordance with established emergency medical standards. Training obligations include ensuring staff know when to summon medical assistance, when to initiate CPR or emergency calls, and how to prevent delays in care for inmates with known respiratory vulnerabilities.

126.    Defendants breached their obligations in the following ways:

a.      Failing to provide Mr. Walker access to necessary asthma medication (e.g., inhalers, nebulizers, or corticosteroids);

b.      Failing to respond appropriately to Mr. Walker's worsening respiratory distress, which constituted an urgent medical condition;

c.      Failing to transfer Mr. Walker to a hospital in a timely manner, despite clear indications of a life-threatening asthma exacerbation;

d.      Failing to implement or enforce policies to ensure proper treatment for inmates with asthma, despite knowing the risks of untreated asthma attacks; and

e.      Failing to train correctional and medical staff on how to recognize and respond to respiratory distress in individuals with asthma.

127.    As a direct and proximate result of Defendant DPSCS's discriminatory failure to provide reasonable accommodations, Mr. Walker suffered severe respiratory distress, preventable suffering, and ultimately death.

128.    The failure to provide timely refills of both Albuterol and Alvesco inhalers, along with a lack of follow-up after submitted sick calls, constitutes a failure to reasonably accommodate Mr. Walker's known disability. The prison's sick call system did not ensure adherence to asthma protocols, and no affirmative steps were taken to confirm medication availability or patient understanding, in violation of 42 U.S.C. §12132 and 29 U.S.C. §794.

129.    Moreover, under 28 C.F.R. § 35.130(b)(7), a public entity is required to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability. Defendant DPSCS's failure to modify their practices—such as denying timely access to rescue inhalers, failing to provide continuous monitoring for asthmatic inmates in distress, and refusing to implement hospital referral protocols—constitutes an actionable violation independent of their denial of medical care. Rather than constituting mere inadequate treatment or medical negligence, these failures reflect a systemic refusal to make reasonable accommodations for individuals with asthma, in direct contravention of Defendants' obligations under Title II of the ADA.

130.    As a direct and proximate result of Defendant DPSCS's actions and omissions, Mr. Walker suffered a severe asthma attack that ultimately resulted in his death.

131.    In summary, as an incarcerated person within DPSCS custody at the Jessup Facility, Mr. Walker was a qualified individual with a disability, entitled to participate in and receive the benefits of Defendant DPSCS's medical services, programs, and activities. 28 C.F.R. § 42.502. Defendant DPSCS discriminated against Mr. Walker on the basis of his chronic asthma by (a)

failing to provide timely access to prescribed inhalers; (b) failing to respond to visible respiratory distress; (c) failing to train staff to identify and respond to asthma-related emergencies; and (d) failing to modify policies governing medication refills and hospital transfers to accommodate inmates with respiratory disabilities. These acts and omissions denied Mr. Walker the benefits of medical care available to other incarcerated individuals and constituted discrimination by reason of his disability, in violation of 42 U.S.C. §12132 and 29 U.S.C. §794(a).

   **WHEREFORE**, Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker, demand judgment against Defendant Department of Public Safety and Correctional Services, jointly and severally, for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and such further relief as this Court deems necessary and just.

### COUNT V – 29 U.S.C. § 794 Discrimination Against Mr. Walker Because of Disability in Violation of Section 504 of the Rehabilitation Act
**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. Defendants Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare Corporation, CHS TX, Inc., and YesCare MD, LLC)**

   132.   Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker ("Plaintiff"), realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

   133.   Under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), Mr. Walker had the right not to be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance, solely by reason of his disability.

   134.   Mr. Walker suffered from a qualifying disability; he was therefore entitled to receive the benefits of a public service, program, or activity; and Defendants kept Mr. Walker from

taking part in or benefiting from a public service, program, or activity because of his disability; and such exclusion or denial directly caused his respiratory distress, suffering, and death.

135.    When state agencies knowingly accept federal funds that come with explicit conditions, they effectively waive their Eleventh Amendment immunity and can be sued for monetary damages under Section 504 of the Rehabilitation Act. See *Spencer v. Earley*, 278 F. App'x 254, 259 n.4 (4th Cir. 2008). Accordingly, Plaintiff's claims under § 504 of the Rehabilitation Act against DPSCS—a state agency—are not barred by the Eleventh Amendment.

136.    Under 29 U.S.C. § 794(b), Section 504 applies to "all of the operations" of a department or agency receiving federal funding. Implementing regulations, including 28 C.F.R. § 42.503, prohibit recipients from denying a qualified handicapped person "an equal opportunity to achieve the same benefits" as others or from providing "services in a setting that is not as integrated."

137.    Asthma is a qualifying disability under the Americans with Disabilities Act (ADA) because it substantially limits a major life activity—breathing (*42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1)(i)*). Asthma is an episodic but persistent respiratory disorder that can become life-threatening if medication is interrupted or environmental triggers are present. The ADA Amendments Act of 2008 (ADAAA) explicitly recognizes that episodic conditions, such as asthma, qualify as disabilities when they substantially limit a major life activity when active (*29 C.F.R. § 1630.2(j)(1)(viii)*). Under the ADAAA, the effects of mitigating measures such as inhalers are disregarded in determining whether an impairment substantially limits a major life activity. 42 U.S.C. § 12102(4)(E).

138.    Upon information and belief, at all relevant times, Mr. Walker suffered from chronic, clinically diagnosed asthma that repeatedly and substantially limited his ability to breathe,

sleep, and engage in daily activities. His asthma was a recurring, life-threatening impairment requiring continuous medication and monitoring. Although Mr. Walker could function at baseline with controller and rescue inhalers, he remained significantly restricted in the manner and duration in which he could perform the act of breathing compared to the average person. When deprived of medication or exposed to common triggers within the correctional setting—dust, poor ventilation, physical exertion—his breathing rapidly deteriorated, leading to severe distress and ultimately death. These facts establish that his asthma substantially limited a major life activity within the meaning of 29 C.F.R. § 1630.2(j)(1)(ii).

139.    While asthma can often be controlled through consistent use of prescribed medication, Mr. Walker's condition was not effectively controlled within the correctional environment where medication was inconsistently supplied and environmental triggers, such as dust, poor air circulation, and physical exertion required during confinement, were pervasive. His reliance on medication demonstrates the severity of his impairment, not its absence.

140.    Upon information and belief, the prolonged lack of inhaler refills, coupled with confinement conditions that aggravated respiratory distress, caused his asthma to become unstable and life-threatening. Thus, even though medication might have provided partial relief when available, Mr. Walker's asthma remained a substantially limiting impairment that required ongoing accommodation under the ADA.

141.    Upon information and belief, between June 2022 and the date of his death, Mr. Walker experienced recurring shortness of breath, chest tightness, and wheezing that progressively worsened as his prescribed inhalers ran out and refills were delayed. During this period, he submitted multiple sick-call slips reporting difficulty breathing and requesting replacement medication. These episodes reflected continuing, uncontrolled symptoms that substantially limited

his ability to perform the major life activity of breathing and demonstrated that his asthma was an active and disabling condition rather than a dormant or mild impairment.

142.    Even when medicated, Mr. Walker remained substantially limited in the major life activity of breathing. Ultimately, Mr. Walker's unfortunate death due to a chronic asthma attack demonstrates that his asthma was not only active and uncontrolled but also a disabling condition that limited not just his ability to perform a major life activity, but his very ability to sustain life.

143.    While Mr. Walker had been prescribed and medicated with inhalers to mitigate his asthma, the use or lack of such inhalers—including when, how, and for how long they were or were not supplied—cannot be invoked to determine whether his asthma substantially limited a major life activity, pursuant to 42 U.S.C. § 12102(4)(E).

144.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance [...]" 29 U.S.C. § 794(a). Therefore, the ADA prohibits discrimination based on disability.

145.    Mr. Walker was otherwise qualified to participate in the services or programs of the Jessup Facility, including but not limited to healthcare and chronic care management services provided to incarcerated individuals.

146.    Upon information and belief, Mr. Walker was treated worse than other incarnated individuals because he was disabled. Defendants and their agents perceived Mr. Walker's asthma-related symptoms as routine or non-urgent and therefore failed to treat his escalating respiratory distress with the same urgency afforded to other inmates without Mr. Walker's disability but seeking medical attention. Because his disability -chronic asthma- was regarded as a controllable

condition rather than a life-threatening disability, his requests for care were repeatedly delayed or disregarded. This dismissal of his condition, based on the very nature of his disability, denied Mr. Walker equal access to emergency medical services and the protections of the prison's healthcare program. Plaintiff therefore brings this claim for **disability**-based discrimination under Title II of the ADA, rather than for **inadequate treatment for disability** or **negligent medical treatment**.

147.    Defendant YesCare, through its operation of the prison infirmary under contract with Defendant DPSCS, and as a recipient of federal financial assistance for the provision of healthcare services, was subject to Section 504 of the Rehabilitation Act. Defendant YesCare's agents and employees, including but not limited to Defendant Offorji, denied Mr. Walker necessary respiratory treatment, medications, and timely referral to higher-level medical care, all of which were required to accommodate his disability. These omissions constituted discrimination on the basis of disability and directly contributed to Mr. Walker's preventable death.

148.    Upon information and belief, YesCare's corporate policies and customs —including but not limited to understaffing, deficient refill procedures, and failure to train staff on respiratory emergencies—constituted methods of administration that excluded Mr. Walker from the benefits of a federally funded program solely by reason of his disability, in violation of Section 504.

149.    At all times relevant, Defendants—individually and collectively—owed Mr. Walker the following duties in connection with his rights:

a.    To provide equal and meaningful access to necessary medical services, including the consistent dispensing of prescribed asthma medications, rescue inhalers, and related respiratory care;

b.      To ensure continuity and timeliness of care by maintaining systems that prevented interruptions in treatment and by facilitating emergency transfer to higher-level care when an inmate's condition exceeded the infirmary's capacity;

c.      To implement and enforce policies and procedures that reasonably accommodated inmates with chronic respiratory disabilities, including monitoring, medication-refill tracking, and emergency-response protocols designed to prevent foreseeable asthma-related harm;

d.      To train medical and correctional staff to recognize wheezing, gasping, or shortness of breath as indicators of serious medical need requiring immediate medical attention; and

e.      To refrain from using methods of administration—such as inadequate staffing, deficient refill processes, or triage practices—that foreseeably excluded inmates with respiratory disabilities from the benefits of federally funded medical programs.

150.     Defendants breached these duties and violated Mr. Walker's rights under Section 504 by:

a.      Failing to supply Mr. Walker's prescribed inhalers and controller medications in a timely and consistent manner, solely by reason of his disability;

b.      Treating his worsening respiratory distress as routine or non-urgent, thereby denying him equal access to emergency medical evaluation and hospital transfer, solely by reason of his disability;

c.      Maintaining institutional and corporate practices that predictably delayed or prevented the treatment of asthma-related emergencies;

d.      Failing to train staff to identify and respond appropriately to respiratory distress, resulting in delayed intervention during a life-threatening episode; and

e.    Administering their healthcare programs through policies and customs that had the effect of excluding and discriminating against inmates with respiratory disabilities, including Mr. Walker, when compared to other inmates seeking medical attention.

151.    As a direct and proximate result of the above Defendants' violations of Section 504, Mr. Walker suffered severe pain, emotional distress, and ultimately wrongful death. His exclusion from necessary medical services by reason of his asthma constituted unlawful discrimination.

152.    In summary, Plaintiff has alleged facts establishing that Mr. Walker suffered from a qualifying disability—namely, asthma—that substantially limited his ability to breathe; that he was therefore entitled to receive the benefits of medical treatment without discrimination; that Defendants had both actual and constructive notice of his condition through medical records and repeated sick-call requests; that Defendants subjected Mr. Walker to discrimination based on his disability by denying him the benefits of medical treatment otherwise available to other inmates, and that this failure and discrimination directly caused his respiratory distress, suffering, and death.

**WHEREFORE,** Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, demands judgment against Defendants Department of Public Safety and Correctional Services, YesCare Corporation, CHS TX, Inc., and YesCare MD, LLC, jointly and severally, for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and such further relief as this Court deems necessary and just.

**COUNT VI – 29 U.S.C. § 794 Discrimination Against Mr. Walker Because of Disability in Violation of Section 504 of the Rehabilitation Act**
**(Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker v. Defendants Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare Corporation, CHS TX, Inc., and YesCare MD, LLC)**

153.    Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker ("Plaintiffs"), realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

154.    Under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), Mr. Walker had the right not to be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance, solely by reason of his disability.

155.    Mr. Walker suffered from a qualifying disability; he was therefore entitled to receive the benefits of a public service, program, or activity; and Defendants kept Mr. Walker from taking part in or benefiting from a public service, program, or activity because of his disability; and such exclusion or denial directly caused his respiratory distress, suffering, and death.

156.    When state agencies knowingly accept federal funds that come with explicit conditions, they effectively waive their Eleventh Amendment immunity and can be sued for monetary damages under Section 504 of the Rehabilitation Act. See *Spencer v. Earley*, 278 F. App'x 254, 259 n.4 (4th Cir. 2008). Accordingly, Plaintiff's claims under § 504 of the Rehabilitation Act against DPSCS—a state agency—are not barred by the Eleventh Amendment.

157.    Under 29 U.S.C. § 794(b), Section 504 applies to "all of the operations" of a department or agency receiving federal funding. Implementing regulations, including 28 C.F.R. § 42.503, prohibit recipients from denying a qualified handicapped person "an equal opportunity to achieve the same benefits" as others or from providing "services in a setting that is not as integrated."

158.    Asthma is a qualifying disability under the Americans with Disabilities Act (ADA) because it substantially limits a major life activity—breathing (*42 U.S.C. § 12102(2)(A); 29 C.F.R.*

*§ 1630.2(j)(1)(i)*). Asthma is an episodic but persistent respiratory disorder that can become life-threatening if medication is interrupted or environmental triggers are present. The ADA Amendments Act of 2008 (ADAAA) explicitly recognizes that episodic conditions, such as asthma, qualify as disabilities when they substantially limit a major life activity when active (*29 C.F.R. § 1630.2(j)(1)(viii)*). Under the ADAAA, the effects of mitigating measures such as inhalers are disregarded in determining whether an impairment substantially limits a major life activity. 42 U.S.C. § 12102(4)(E).

159.    Upon information and belief, at all relevant times, Mr. Walker suffered from chronic, clinically diagnosed asthma that repeatedly and substantially limited his ability to breathe, sleep, and engage in daily activities. His asthma was a recurring, life-threatening impairment requiring continuous medication and monitoring. Although Mr. Walker could function at baseline with controller and rescue inhalers, he remained significantly restricted in the manner and duration in which he could perform the act of breathing compared to the average person. When deprived of medication or exposed to common triggers within the correctional setting—dust, poor ventilation, physical exertion—his breathing rapidly deteriorated, leading to severe distress and ultimately death. These facts establish that his asthma substantially limited a major life activity within the meaning of 29 C.F.R. § 1630.2(j)(1)(ii).

160.    While asthma can often be controlled through consistent use of prescribed medication, Mr. Walker's condition was not effectively controlled within the correctional environment where medication was inconsistently supplied and environmental triggers, such as dust, poor air circulation, and physical exertion required during confinement, were pervasive. His reliance on medication demonstrates the severity of his impairment, not its absence.

161.    Upon information and belief, the prolonged lack of inhaler refills, coupled with confinement conditions that aggravated respiratory distress, caused his asthma to become unstable and life-threatening. Thus, even though medication might have provided partial relief when available, Mr. Walker's asthma remained a substantially limiting impairment that required ongoing accommodation under the ADA.

162.    Upon information and belief, between June 2022 and the date of his death, Mr. Walker experienced recurring shortness of breath, chest tightness, and wheezing that progressively worsened as his prescribed inhalers ran out and refills were delayed. During this period, he submitted multiple sick-call slips reporting difficulty breathing and requesting replacement medication. These episodes reflected continuing, uncontrolled symptoms that substantially limited his ability to perform the major life activity of breathing and demonstrated that his asthma was an active and disabling condition rather than a dormant or mild impairment.

163.    Even when medicated, Mr. Walker remained substantially limited in the major life activity of breathing. Ultimately, Mr. Walker's unfortunate death due to a chronic asthma attack demonstrates that his asthma was not only active and uncontrolled but also a disabling condition that limited not just his ability to perform a major life activity, but his very ability to sustain life.

164.    While Mr. Walker had been prescribed and medicated with inhalers to mitigate his asthma, the use or lack of such inhalers—including when, how, and for how long they were or were not supplied—cannot be invoked to determine whether his asthma substantially limited a major life activity, pursuant to 42 U.S.C. § 12102(4)(E).

165.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance […]" 29 U.S.C. § 794(a). Therefore, the ADA prohibits discrimination based on disability.

166.    Mr. Walker was otherwise qualified to participate in the services or programs of the Jessup Facility, including but not limited to healthcare and chronic care management services provided to incarcerated individuals.

167.    Upon information and belief, Mr. Walker was treated worse than other incarnated individuals because he was disabled. Defendants and their agents perceived Mr. Walker's asthma-related symptoms as routine or non-urgent and therefore failed to treat his escalating respiratory distress with the same urgency afforded to other inmates without Mr. Walker's disability but seeking medical attention. Because his disability -chronic asthma- was regarded as a controllable condition rather than a life-threatening disability, his requests for care were repeatedly delayed or disregarded. This dismissal of his condition, based on the very nature of his disability, denied Mr. Walker equal access to emergency medical services and the protections of the prison's healthcare program. Plaintiff therefore brings this claim for **disability**-based discrimination under Title II of the ADA, rather than for **inadequate treatment for disability** or **negligent medical treatment**.

168.    Defendant YesCare, through its operation of the prison infirmary under contract with Defendant DPSCS, and as a recipient of federal financial assistance for the provision of healthcare services, was subject to Section 504 of the Rehabilitation Act. Defendant YesCare's agents and employees, including but not limited to Defendant Offorji, denied Mr. Walker necessary respiratory treatment, medications, and timely referral to higher-level medical care, all of which were required to accommodate his disability. These omissions constituted discrimination on the basis of disability and directly contributed to Mr. Walker's preventable death.

169.     Upon information and belief, YesCare's corporate policies and customs —including but not limited to understaffing, deficient refill procedures, and failure to train staff on respiratory emergencies—constituted methods of administration that excluded Mr. Walker from the benefits of a federally funded program solely by reason of his disability, in violation of Section 504.

170.     At all times relevant, Defendants—individually and collectively—owed Mr. Walker the following duties in connection with his rights:

a.       To provide equal and meaningful access to necessary medical services, including the consistent dispensing of prescribed asthma medications, rescue inhalers, and related respiratory care;

b.       To ensure continuity and timeliness of care by maintaining systems that prevented interruptions in treatment and by facilitating emergency transfer to higher-level care when an inmate's condition exceeded the infirmary's capacity;

c.       To implement and enforce policies and procedures that reasonably accommodated inmates with chronic respiratory disabilities, including monitoring, medication-refill tracking, and emergency-response protocols designed to prevent foreseeable asthma-related harm;

d.       To train medical and correctional staff to recognize wheezing, gasping, or shortness of breath as indicators of serious medical need requiring immediate medical attention; and

e.       To refrain from using methods of administration—such as inadequate staffing, deficient refill processes, or triage practices—that foreseeably excluded inmates with respiratory disabilities from the benefits of federally funded medical programs.

171.     Defendants breached these duties and violated Mr. Walker's rights under Section 504 by:

a.      Failing to supply Mr. Walker's prescribed inhalers and controller medications in a timely and consistent manner, solely by reason of his disability;

b.      Treating his worsening respiratory distress as routine or non-urgent, thereby denying him equal access to emergency medical evaluation and hospital transfer, solely by reason of his disability;

c.      Maintaining institutional and corporate practices that predictably delayed or prevented the treatment of asthma-related emergencies;

d.      Failing to train staff to identify and respond appropriately to respiratory distress, resulting in delayed intervention during a life-threatening episode; and

e.      Administering their healthcare programs through policies and customs that had the effect of excluding and discriminating against inmates with respiratory disabilities, including Mr. Walker, when compared to other inmates seeking medical attention.

172.    As a direct and proximate result of the above Defendants' violations of Section 504, Mr. Walker suffered severe pain, emotional distress, and ultimately wrongful death. His exclusion from necessary medical services by reason of his asthma constituted unlawful discrimination.

173.    In summary, Plaintiff has alleged facts establishing that Mr. Walker suffered from a qualifying disability—namely, asthma—that substantially limited his ability to breathe; that he was therefore entitled to receive the benefits of medical treatment without discrimination; that Defendants had both actual and constructive notice of his condition through medical records and repeated sick-call requests; that Defendants subjected Mr. Walker to discrimination based on his disability by denying him the benefits of medical treatment otherwise available to other inmates, and that this failure and discrimination directly caused his respiratory distress, suffering, and death.

**WHEREFORE,** Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker, demand judgment against Defendants Department of Public Safety and Correctional Services, YesCare Corporation, CHS TX, Inc., and YesCare MD, LLC, jointly and severally, for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and such further relief as this Court deems necessary and just.

### COUNT VII – Violation of Maryland Declaration of Rights
**Wrongful Death**
**(Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

174.    Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker (Plaintiffs), reallege and incorporate by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further allege:

175.    The actions of agents and/or employees of DPSCS, in their individual capacities, all of which were committed under the color of their authority as medical and administrative staff at the Jessup Facility, violated the Maryland Declaration of Rights, including but not limited to the right to be free from cruel and unusual punishment, the right to security of person, and the right to receive proper and timely medical care while in state custody.

176.    Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves ("Defendants") engaged in unconstitutional customs, policies and practices that violated Decedent's rights under the Maryland Declaration of Rights.

177.    As a direct and proximate result of the acts and omissions of Defendants, Mr. Walker was deprived of his rights secured to him under the Maryland Declaration of Rights,

including but not limited to Article 16, guaranteeing freedom from cruel and unusual punishment and the right to humane and adequate medical care while incarcerated.

178.    The Defendants' duties included, but are not limited to:

a.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

b.    Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

c.    Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

d.    Housing the Decedent in a medically appropriate unit when clinical instability was evident;

e.    Upholding Mr. Walker's constitutional rights under Article 16 of the Maryland Declaration of Rights, including his right to freedom from cruel and unusual punishment.

179.    The Defendants breached their duties in the following ways:

a.    Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b.    Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c.    Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d.  Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e.  Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f.  Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g.  Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Article 16 of the Maryland Declaration of Rights;

h.  Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

180.    Upon information and belief, Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, the nurse practitioner who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse.

181.    As a direct and proximate result of the actions and omissions, described above, of Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, the Decedent was deprived of his rights and was caused to suffer severe bodily and emotional injuries, and death.

182.    Additionally, to the extent that Defendants acted outside the scope of their employment, with gross negligence, or with deliberate disregard for Mr. Walker's serious medical needs, they are liable in their individual capacities for the harm caused.

183.    The actions and omissions described above constitute gross negligence and/or actual malice, including repeated, knowing disregard of Mr. Walker's documented asthma history, visible respiratory distress, explicit requests for emergency treatment, and critical medication being withheld despite known prescriptions. These were not mere lapses in care but conscious, reckless decisions in the face of an obvious medical emergency, amounting to an intentional failure to perform a manifest duty and a reckless disregard of life-threatening consequences.

184.    Defendants YesCare Corporation, CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Kiabayan, Defendant Offorji and Defendant Hargraves, acted under color of state law by providing constitutionally mandated medical care within the State's prison system under a government contract, pursuant to State-established protocols. These Defendants carried out core public safety and health functions on behalf of the State, making them subject to liability under the Maryland Declaration of Rights.

185.    The rights secured under the Maryland Declaration of Rights are independently actionable under Maryland law, and are not limited or barred by the standards of the federal Constitution. Even if the corresponding federal claims were to fail, the Maryland Declaration of Rights permits recovery for grossly negligent or malicious violations of a prison inmate's state constitutional rights. *See DiPino v. Davis*, 354 Md. 18 (1999).

186.    As a direct and proximate result of the negligence committed by the above Defendants, Plaintiffs, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-

904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

**WHEREFORE**, Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker, demand judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, jointly and severally, for monetary damages in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

### COUNT VIII – Violation of Maryland Declaration of Rights
**Wrongful Death**
**(Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker v. Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight)**

187.    Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker (Plaintiffs), reallege and incorporate by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further allege:

188.    The actions of agents and/or employees of DPSCS, in their individual capacities, all of which were committed under the color of their authority as correctional officers and administrative staff at the Jessup Facility, violated the Maryland Declaration of Rights, including but not limited to the right to be free from cruel and unusual punishment, the right to security of person, and the right to receive proper and timely medical care while in state custody.

189.    Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya,

Waheed Jimoh, Jaques Kemegne, Kevin Hight ("Defendants") engaged in unconstitutional customs, policies and practices that violated Decedent's rights under the Maryland Declaration of Rights.

190.    As a direct and proximate result of the acts and omissions of Defendants, Mr. Walker was deprived of his rights secured to him under the Maryland Declaration of Rights, including but not limited to Article 16, guaranteeing freedom from cruel and unusual punishment and the right to humane and adequate medical care while incarcerated.

191.    The Defendants' duties (as applicable to their roles) included, but are not limited to:

   a.  Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

   b.  Ensuring the safety and security of incarcerated individuals under their supervision;

   c.  Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

   d.  Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

   e.  Housing the Decedent in a medically appropriate unit when clinical instability was evident;

   f.  Upholding Mr. Walker's constitutional rights under Article 16 of the Maryland Declaration of Rights, including his right to freedom from cruel and unusual punishment.

192.    The Defendants breached their duties (as applicable to their roles) in the following ways:

a.  Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b.  Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c.  Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d.  Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e.  Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f.  Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g.  Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Article 16 of the Maryland Declaration of Rights;

h.  Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

193.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and

Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendant Odunze failed to ensure compliance with medical care policies and protocols, as well as to intervene in Mr. Walker's medical crisis. Defendants Irekoya, Jimoh, and Kemegne, who participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights under Article 16 of the Maryland Declaration of Rights.

194.    As a direct and proximate result of the actions and omissions, described above, of Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight, the Decedent was deprived of his rights and was caused to suffer severe bodily and emotional injuries, and death.

195.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight, are sued in their **individual capacities**, and **not as State employees in their official capacities**, thereby excluding the applicability of Eleventh Amendment immunity under the United States Constitution.

196.    Additionally, to the extent that these Defendants acted outside the scope of their employment, with gross negligence, or with deliberate disregard for Mr. Walker's serious medical needs, they are liable in their individual capacities for the harm caused.

197.    The actions and omissions described above constitute gross negligence and/or actual malice, including repeated, knowing disregard of Mr. Walker's documented asthma history, visible respiratory distress, explicit requests for emergency treatment, and critical medication being withheld despite known prescriptions. These were not mere lapses in care but conscious, reckless decisions in the face of an obvious medical emergency, amounting to an intentional failure to perform a manifest duty and a reckless disregard of life-threatening consequences.

198.    The rights secured under the Maryland Declaration of Rights are independently actionable under Maryland law, and are not limited or barred by the standards of the federal Constitution. Even if the corresponding federal claims were to fail, the Maryland Declaration of Rights permits recovery for grossly negligent or malicious violations of a prison inmate's state constitutional rights. *See DiPino v. Davis*, 354 Md. 18 (1999).

199.    As a direct and proximate result of the negligence committed by the above Defendants, Plaintiffs, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

**WHEREFORE**, Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker, demand judgment against Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim,

Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight, jointly and severally, for monetary damages in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

### COUNT IX – Maryland State Declaration of Rights
#### (Survival Action)
**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

200.    Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

201.    The actions of agents and/or employees of DPSCS, in their individual capacities, all of which were committed under the color of their authority as medical and administrative staff at the Jessup Facility, violated the Maryland Declaration of Rights, including but not limited to the right to be free from cruel and unusual punishment, the right to security of person, and the right to receive proper and timely medical care while in state custody.

202.    Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves ("Defendants") engaged in unconstitutional customs, policies and practices that violated Decedent's rights under the Maryland Declaration of Rights.

203.    As a direct and proximate result of the acts and omissions of Defendants, Mr. Walker was deprived of his rights secured to him under the Maryland Declaration of Rights, including but not limited to Article 16, guaranteeing freedom from cruel and unusual punishment and the right to humane and adequate medical care while incarcerated.

70

204.    The Defendants' duties included, but are not limited to:

a.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

b.    Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

c.    Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

d.    Housing the Decedent in a medically appropriate unit when clinical instability was evident;

e.    Upholding Mr. Walker's constitutional rights under Article 16 of the Maryland Declaration of Rights, including his right to freedom from cruel and unusual punishment.

205.    The Defendants breached their duties in the following ways:

a.    Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b.    Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c.    Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d.    Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e.   Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f.   Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g.   Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Article 16 of the Maryland Declaration of Rights;

h.   Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

206.    Upon information and belief, Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, the nurse practitioner who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse.

207.    As a direct and proximate result of the actions and omissions, described above, of Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, the Decedent was deprived of his rights and was caused to suffer severe bodily and emotional injuries, and death.

208.    Additionally, to the extent that Defendants acted outside the scope of their employment, with gross negligence, or with deliberate disregard for Mr. Walker's serious medical needs, they are liable in their individual capacities for the harm caused.

209.    The actions and omissions described above constitute gross negligence and/or actual malice, including repeated, knowing disregard of Mr. Walker's documented asthma history, visible respiratory distress, explicit requests for emergency treatment, and critical medication being withheld despite known prescriptions. These were not mere lapses in care but conscious, reckless decisions in the face of an obvious medical emergency, amounting to an intentional failure to perform a manifest duty and a reckless disregard of life-threatening consequences.

210.    Defendants YesCare Corporation, CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Kiabayan, Defendant Offorji and Defendant Hargraves, acted under color of state law by providing constitutionally mandated medical care within the State's prison system under a government contract, pursuant to State-established protocols. These Defendants carried out core public safety and health functions on behalf of the State, making them subject to liability under the Maryland Declaration of Rights.

211.    The rights secured under the Maryland Declaration of Rights are independently actionable under Maryland law, and are not limited or barred by the standards of the federal Constitution. Even if the corresponding federal claims were to fail, the Maryland Declaration of Rights permits recovery for grossly negligent or malicious violations of a prison inmate's state constitutional rights. *See DiPino v. Davis*, 354 Md. 18 (1999).

212.    As a direct and proximate result of the breach of the duties committed by Defendants, Plaintiff sustained damages awardable pursuant to common law and state law,

including to Md. Code, Estates & Trusts § 7-401(y) and Md. Code, Courts & Judicial Proceedings § 6-401(a), arising out of the death of Mr. Walker.

**WHEREFORE**, Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, demands judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, jointly and severally, for monetary damages in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

<u>**COUNT X – Violation of Maryland Declaration of Rights**</u>
**(Survival Action)**
**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight)**

213.    Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker (Plaintiff), realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

214.    The actions of agents and/or employees of DPSCS, in their individual capacities, all of which were committed under the color of their authority as correctional officers and administrative staff at the Jessup Facility, violated the Maryland Declaration of Rights, including but not limited to the right to be free from cruel and unusual punishment, the right to security of person, and the right to receive proper and timely medical care while in state custody.

215.    Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight ("Defendants") engaged in unconstitutional

customs, policies and practices that violated Decedent's rights under the Maryland Declaration of Rights.

216.    As a direct and proximate result of the acts and omissions of Defendants, Mr. Walker was deprived of his rights secured to him under the Maryland Declaration of Rights, including but not limited to Article 16, guaranteeing freedom from cruel and unusual punishment and the right to humane and adequate medical care while incarcerated.

217.    The Defendants' duties (as applicable to their roles) included, but are not limited to:

a.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

b.    Ensuring the safety and security of incarcerated individuals under their supervision;

c.    Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

d.    Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

e.    Housing the Decedent in a medically appropriate unit when clinical instability was evident;

f.    Upholding Mr. Walker's constitutional rights under Article 16 of the Maryland Declaration of Rights, including his right to freedom from cruel and unusual punishment.

218.    The Defendants breached their duties (as applicable to their roles) in the following ways:

a. Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b. Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c. Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d. Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e. Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f. Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g. Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Article 16 of the Maryland Declaration of Rights;

h. Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

219.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and

Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendant Odunze failed to ensure compliance with medical care policies and protocols, as well as to intervene in Mr. Walker's medical crisis. Defendants Irekoya, Jimoh, and Kemegne, who participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights under Article 16 of the Maryland Declaration of Rights.

220.    As a direct and proximate result of the actions and omissions, described above, of Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight, the Decedent was deprived of his rights and was caused to suffer severe bodily and emotional injuries, and death.

221.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight, are sued in their **individual capacities**, and **not as State employees in their official capacities**, thereby excluding the applicability of Eleventh Amendment immunity under the United States Constitution.

222.    Additionally, to the extent that these Defendants acted outside the scope of their employment, with gross negligence, or with deliberate disregard for Mr. Walker's serious medical needs, they are liable in their individual capacities for the harm caused.

223.    The actions and omissions described above constitute gross negligence and/or actual malice, including repeated, knowing disregard of Mr. Walker's documented asthma history, visible respiratory distress, explicit requests for emergency treatment, and critical medication being withheld despite known prescriptions. These were not mere lapses in care but conscious, reckless decisions in the face of an obvious medical emergency, amounting to an intentional failure to perform a manifest duty and a reckless disregard of life-threatening consequences.

224.    The rights secured under the Maryland Declaration of Rights are independently actionable under Maryland law, and are not limited or barred by the standards of the federal Constitution. Even if the corresponding federal claims were to fail, the Maryland Declaration of Rights permits recovery for grossly negligent or malicious violations of a prison inmate's state constitutional rights. *See DiPino v. Davis*, 354 Md. 18 (1999).

225.    As a direct and proximate result of the breach of the duties committed by Defendants, Plaintiff sustained damages awardable pursuant to common law and state law, including to Md. Code, Estates & Trusts § 7-401(y) and Md. Code, Courts & Judicial Proceedings § 6-401(a), arising out of the death of Mr. Walker.

**WHEREFORE**, Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, demands judgment against Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight, jointly and severally, for monetary damages in a sum that exceeds Seventy-Five Thousand Dollars

($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

## COUNT XI – Negligence: State Law
### Wrongful Death
**(Plaintiff Tayona Lena Victoria Walker, individually v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

226.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

227.    Upon information and belief, Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC (collectively, "YesCare"), were, at all times relevant, the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services, hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

228.    At all times relevant hereto, Defendants, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the diagnosis and treatment of respiratory conditions, including asthma and other serious medical conditions requiring urgent care, and the timely and accurate dispensing of prescribed medications and continuity of medical care.

229.    Defendant YesCare, and their actual and/or apparent agents, servants and employees, had a duty to Mr. Walker to exercise that degree of skill, judgment, and care expected of reasonably competent medical practitioners practicing under the same or similar circumstances as those involving Mr. Walker. This aforementioned duty includes taking the appropriate precautions to prevent unnecessary death to Mr. Walker, performing appropriate and timely

medical procedures, informing Mr. Walker of their results, using appropriate medical expertise, performing appropriate diagnostic testing, and administering such other care as was necessary to treat Mr. Walker and avoid causing preventable injury to him.

230.     Defendant YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

231.     As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, Defendant YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

232.     Defendant Kiabayan Defendant Offorji, Defendant Hargraves and Defendant YesCare owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

233.    Contrary to these duties, Defendant YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

234.    Throughout the entire course of Defendant YesCare's negligent and improper treatment of Mr. Walker, Defendants breached their duties and fell below the standard of care through the following acts and omissions:

a.  Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

b.  Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c.  Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d.  Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e.  Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f.   Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.   Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and Defendant YesCare's own contractual obligations;

h.   Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.   Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.   Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.   Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.   Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

235.   The injuries and death of Mr. Walker were the natural, probable, and foreseeable consequence of Defendants' failure to provide timely and adequate medical care for his known asthma condition.

236.   As a direct and proximate result of Defendants' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Plaintiff

seeks all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's surviving family members; loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

**WHEREFORE,** Plaintiff Tayona Lena Victoria Walker demands judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, Nicole Hargraves, jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($ 75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

<u>COUNT XII – Negligence: State Law</u>
**Wrongful Death**
**(Plaintiff Donta Taylor, individually v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

237.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

238.    Upon information and belief, Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC (collectively, "YesCare"), were, at all times relevant, the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services, hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

239.    At all times relevant hereto, Defendants, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the diagnosis and treatment of respiratory conditions, including asthma

and other serious medical conditions requiring urgent care, and the timely and accurate dispensing of prescribed medications and continuity of medical care.

240.    Defendant YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

241.    As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, Defendant YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

242.    Defendant Kiabayan Defendant Offorji, Defendant Hargraves and YesCare owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

243.    Contrary to these duties, Defendant YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant

Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

244. Throughout the entire course of Defendant YesCare's negligent and improper treatment of Mr. Walker, Defendants breached their duties and fell below the standard of care through the following acts and omissions:

a. Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

b. Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c. Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d. Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e. Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f. Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.    Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and YesCare's own contractual obligations;

h.    Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.    Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.    Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.    Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.    Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

245.    The injuries and death of Mr. Walker were the natural, probable, and foreseeable consequence of Defendants' failure to provide timely and adequate medical care for his known asthma condition.

246.    As a direct and proximate result of Defendants' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Plaintiff seeks all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's

surviving family members; loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

**WHEREFORE**, Plaintiff Donta Taylor demands judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, Nicole Hargraves, jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($ 75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

<u>**COUNT XIII – Negligence: State Law**</u>
**Wrongful Death**
**(Use Plaintiff Martha Taylor, individually v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

247.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

248.    Upon information and belief, Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC (collectively, "YesCare"), were, at all times relevant, the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services, hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

249.    At all times relevant hereto, Defendants, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the diagnosis and treatment of respiratory conditions, including asthma and other serious medical conditions requiring urgent care, and the timely and accurate dispensing of prescribed medications and continuity of medical care.

250.    Defendant YesCare, and their actual and/or apparent agents, servants and employees, had a duty to Mr. Walker to exercise that degree of skill, judgment, and care expected of reasonably competent medical practitioners practicing under the same or similar circumstances as those involving Mr. Walker. This aforementioned duty includes taking the appropriate precautions to prevent unnecessary death to Mr. Walker, performing appropriate and timely medical procedures, informing Mr. Walker of their results, using appropriate medical expertise, performing appropriate diagnostic testing, and administering such other care as was necessary to treat Mr. Walker and avoid causing preventable injury to him.

251.    Defendant YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

252.    As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, Defendant YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

253.    Defendant Kiabayan Defendant Offorji, Defendant Hargraves and Defendant YesCare owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

254.    Contrary to these duties, Defendant YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

255.    Throughout the entire course of Defendants' negligent and improper treatment of Mr. Walker, Defendants breached their duties and fell below the standard of care through the following acts and omissions:

a.   Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

b.   Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c.   Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d.  Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e.  Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f.  Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.  Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and Defendant YesCare's own contractual obligations;

h.  Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.  Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.  Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.  Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.  Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

256.    The injuries and death of Mr. Walker were the natural, probable, and foreseeable consequence of Defendants' failure to provide timely and adequate medical care for his known asthma condition.

257.    As a direct and proximate result of Defendants' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Use Plaintiff seeks all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's surviving family members; loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

**WHEREFORE,** Use Plaintiff Martha Taylor demands judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, Nicole Hargraves, jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($ 75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

### COUNT XIV – Negligence: State Law
**Wrongful Death**
**(Use Plaintiff Edward Walker, individually v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

258.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

259.    Upon information and belief, Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC (collectively, "YesCare"), were, at all times relevant, the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services,

hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

260.    At all times relevant hereto, Defendants, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the diagnosis and treatment of respiratory conditions, including asthma and other serious medical conditions requiring urgent care, and the timely and accurate dispensing of prescribed medications and continuity of medical care.

261.    Defendant YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

262.    As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, Defendant YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

263.    Defendant Kiabayan Defendant Offorji, Defendant Hargraves and Defendant YesCare owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

264.    Contrary to these duties, Defendant YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

265.    Throughout the entire course of Defendant YesCare's negligent and improper treatment of Mr. Walker, Defendants breached their duties and fell below the standard of care through the following acts and omissions:

a.    Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

b.    Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c.    Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d.   Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e.   Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f.   Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.   Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and Defendant YesCare's own contractual obligations;

h.   Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.   Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.   Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.   Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.   Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

94

266.    The injuries and death of Mr. Walker were the natural, probable, and foreseeable consequence of Defendants' failure to provide timely and adequate medical care for his known asthma condition.

267.    As a direct and proximate result of Defendants' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Use Plaintiff seeks all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's surviving family members; loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

**WHEREFORE,** Use Plaintiff Edward Walker demands judgment against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, Nicole Hargraves, jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($ 75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

### COUNT XV – Negligence: State Law
**Wrongful Death**
**(Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker v. Correct Rx Pharmacy Services, Inc.)**

268.    The allegations of the preceding paragraphs, including ¶ 46 to ¶51, asserted against Defendant Correct Rx, are re-alleged and incorporated by reference as if fully set forth herein.

269.    Upon information and belief, Defendant Correct Rx, at all times relevant, was the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services, hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

270.    At all times relevant hereto, Defendant Correct Rx, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the timely and accurate dispensing of prescribed medications and continuity of medical care.

271.    Defendant Correct Rx, and its actual and/or apparent agents, servants, and employees, owed Mr. Walker a duty to exercise that degree of skill, judgment, and care expected of reasonably competent pharmacists and pharmacy service providers practicing under the same or similar circumstances as those involving Mr. Walker. This duty included: ensuring the timely and accurate dispensing of prescribed medications; maintaining continuity of Mr. Walker's asthma medication supply; verifying active prescriptions and renewal requests; promptly communicating with medical staff regarding refill authorizations and availability; and taking reasonable precautions to prevent foreseeable harm from interrupted or delayed access to prescribed medication.

272.    Defendant Correct Rx, and its actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of pharmaceutical care necessary to properly and timely dispense, monitor, and maintain continuity of Mr. Walker's prescribed respiratory medications. Contrary to established pharmacy protocols and correctional healthcare standards, Defendant Correct Rx failed to ensure the consistent availability and timely refilling of Mr. Walker's prescribed inhalers and other necessary medications, failed to communicate refill delays or authorization issues to medical staff, and failed to take corrective action despite repeated indications of medication lapses. As a result of Defendant Correct Rx's negligent and improper handling of Mr. Walker's prescribed medications, Mr. Walker was deprived of essential asthma

treatment, leading to the progressive worsening of his respiratory condition and, ultimately, his preventable and wrongful death.

273.    As the principal for the personnel who provided care to Mr. Walker, Defendant Correct Rx is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

274.    Throughout the entire course of Defendant Correct Rx's negligent and improper provision of pharmacy services to Mr. Walker, Defendant Correct Rx, through its actual and/or apparent agents, servants, and employees, breached its duties and fell below the applicable standard of pharmaceutical care through the following acts and omissions:

a.    Failing to ensure the timely processing and dispensing of Mr. Walker's prescribed asthma medications, including rescue and controller inhalers, despite active prescriptions in his medical chart;

b.    Failing to maintain adequate medication inventory and refill systems to ensure continuity of Mr. Walker's prescribed respiratory medications;

c.    Failing to verify and follow up on refill requests transmitted from infirmary staff, resulting in prolonged lapses in Mr. Walker's access to prescribed medication;

d.    Failing to communicate with YesCare medical providers when refill authorizations were delayed, expired, or missing, thereby allowing interruptions in essential treatment;

e.    Failing to maintain accurate and contemporaneous medication-dispensing logs for Mr. Walker, including the dates, quantities, and refill status of his prescribed inhalers;

f.      Failing to implement or enforce reasonable safeguards and double-check procedures to identify and correct medication non-delivery or refill delays for inmates with chronic respiratory disabilities;

g.      Failing to recognize that repeated non-dispensing of prescribed asthma medication posed a foreseeable and substantial risk of harm, including respiratory arrest and death;

h.      Failing to train pharmacy staff and technicians to prioritize and escalate refill requests for life-sustaining medications such as inhalers for inmates with chronic asthma;

i.      Failing to communicate refill shortages, denials, or system errors to clinical and custody personnel responsible for inmate medical care; and

j.      Failing to act as a reasonable and prudent pharmacy service provider under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

275.    The injuries and death of Mr. Walker were the natural, probable, and foreseeable consequence of Defendant Correct Rx' failure to provide timely and adequate medical care for his known asthma condition.

276.    As a direct and proximate result of Defendant Correct Rx'' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Plaintiffs seek all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's surviving family members; loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

**WHEREFORE,** Plaintiffs Tayona Lena Victoria Walker, Donta Taylor, and Use Plaintiffs Martha Taylor and Edward Walker demand judgment against Defendant Correct Rx Pharmacy

Services, Inc., jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($ 75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

**COUNT XVI – Negligence: State Law**
**(Survival Action)**
**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

277.    Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker ("Plaintiff"), realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

278.    This Count is brought against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, Nicole Hargraves,, pursuant to MD. CODE, EST. & TRUSTS § 7–401(y), on behalf of the Estate of Donta Walker for damages incurred during his lifetime, including physical pain, mental anguish, and medical costs, resulting from Defendants' negligent acts and omissions.

279.    Upon information and belief, Defendants were, at all times relevant, the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services, hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

280.    At all times relevant hereto, Defendants, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the diagnosis and treatment of respiratory conditions, including asthma

and other serious medical conditions requiring urgent care, and the timely and accurate dispensing of prescribed medications and continuity of medical care.

281.    Defendant YesCare and their agents, servants and employees, owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

282.    Contrary to these duties, YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

283.    Throughout the entire course of Defendant YesCare's negligent and improper treatment of Mr. Walker, Defendant YesCare breached their duties and fell below the standard of care through the following acts and omissions:

    a.  Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

    b.  Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c.   Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d.   Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e.   Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f.   Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.   Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and YesCare's own contractual obligations;

h.   Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.   Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.   Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.  Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.  Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

284.    As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, Defendant YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors, including but not limited to Defendant Kiabayan, Defendant Offorji, Defendant Hargraves, within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

285.    As a direct and proximate result of the breaches of duty committed by Defendants, Plaintiff sustained damages, including but not limited to physical pain, mental anguish, medical expenses, and all damages recoverable under Maryland law, including those authorized under Md. Code, Est. & Trusts § 7-401(y), which permits a personal representative to prosecute, defend, or compromise any action that the decedent could have maintained, and Md. Code, Cts. & Jud. Proc. § 6-401(a), which provides for the survival of causes of action for the recovery of damages for injury to the person, arising out of and resulting from the death of Mr. Walker.

286.    Defendants are liable for such damages as would have been recoverable by Decedent, Mr. Walker, had he survived, including but not limited to conscious pain and suffering, loss of dignity, emotional distress, medical expenses, funeral expenses, and all damages awardable pursuant to common law and applicable Maryland law. This Count is derivative of the negligence count and not a stand-alone claim or independent tort.

**WHEREFORE**, Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker, requests judgment from and against Defendants YesCare Corporation, CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, jointly or severally, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) or such greater amount as may be warranted by the evidence at trial, plus interest from the date of injury, together with all costs, expenses, attorney's fees, and such further relief as may be recoverable under applicable law.

<u>**COUNT XVII – Negligence: State Law**</u>
**(Survival Action)**
**(Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker v. Correct Rx Pharmacy Services, Inc.)**

287.    The allegations of the preceding paragraphs, including ¶ 46 to ¶51, asserted against Defendant Correct Rx, are re-alleged and incorporated by reference as if fully set forth herein.

288.    Upon information and belief, Defendant Correct Rx, at all times relevant, was the operators, agents, employees or contractors of the Maryland Department of Public Safety and Correctional Services, hired to provide healthcare services to inmates in the custody of the Jessup Facility, including receiving and filling prescriptions.

289.    At all times relevant hereto, Defendant Correct Rx, along with their actual and/or apparent agents, servants, and employees, held themselves out as qualified healthcare providers possessing the degree of skill, knowledge, and expertise ordinarily expected of medical professionals responsible for ensuring the timely and accurate dispensing of prescribed medications and continuity of medical care.

290.    Defendant Correct Rx, and its actual and/or apparent agents, servants, and employees, owed Mr. Walker a duty to exercise that degree of skill, judgment, and care expected of reasonably competent pharmacists and pharmacy service providers practicing under the same

or similar circumstances as those involving Mr. Walker. This duty included: ensuring the timely and accurate dispensing of prescribed medications; maintaining continuity of Mr. Walker's asthma medication supply; verifying active prescriptions and renewal requests; promptly communicating with medical staff regarding refill authorizations and availability; and taking reasonable precautions to prevent foreseeable harm from interrupted or delayed access to prescribed medication.

291.    Defendant Correct Rx, and its actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of pharmaceutical care necessary to properly and timely dispense, monitor, and maintain continuity of Mr. Walker's prescribed respiratory medications. Contrary to established pharmacy protocols and correctional healthcare standards, Defendant Correct Rx failed to ensure the consistent availability and timely refilling of Mr. Walker's prescribed inhalers and other necessary medications, failed to communicate refill delays or authorization issues to medical staff, and failed to take corrective action despite repeated indications of medication lapses. As a result of Defendant Correct Rx's negligent and improper handling of Mr. Walker's prescribed medications, Mr. Walker was deprived of essential asthma treatment, leading to the progressive worsening of his respiratory condition and, ultimately, his preventable and wrongful death.

292.    As the principal for the personnel who provided care to Mr. Walker, Defendant Correct Rx is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

293.    Throughout the entire course of Defendant Correct Rx's negligent and improper provision of pharmacy services to Mr. Walker, Defendant Correct Rx, through its actual and/or apparent agents, servants, and employees, breached its duties and fell below the applicable standard of pharmaceutical care through the following acts and omissions:

a.    Failing to ensure the timely processing and dispensing of Mr. Walker's prescribed asthma medications, including rescue and controller inhalers, despite active prescriptions in his medical chart;

b.    Failing to maintain adequate medication inventory and refill systems to ensure continuity of Mr. Walker's prescribed respiratory medications;

c.    Failing to verify and follow up on refill requests transmitted from infirmary staff, resulting in prolonged lapses in Mr. Walker's access to prescribed medication;

d.    Failing to communicate with YesCare medical providers when refill authorizations were delayed, expired, or missing, thereby allowing interruptions in essential treatment;

e.    Failing to maintain accurate and contemporaneous medication-dispensing logs for Mr. Walker, including the dates, quantities, and refill status of his prescribed inhalers;

f.    Failing to implement or enforce reasonable safeguards and double-check procedures to identify and correct medication non-delivery or refill delays for inmates with chronic respiratory disabilities;

g.    Failing to recognize that repeated non-dispensing of prescribed asthma medication posed a foreseeable and substantial risk of harm, including respiratory arrest and death;

h.    Failing to train pharmacy staff and technicians to prioritize and escalate refill requests for life-sustaining medications such as inhalers for inmates with chronic asthma;

i.    Failing to communicate refill shortages, denials, or system errors to clinical and custody personnel responsible for inmate medical care; and

j.    Failing to act as a reasonable and prudent pharmacy service provider under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

294.    The injuries and death of Mr. Walker were the natural, probable, and foreseeable consequence of Defendant Correct Rx' failure to provide timely and adequate medical care for his known asthma condition.

295.    As a direct and proximate result of the breaches of duty committed by Defendants, Plaintiff sustained damages, including but not limited to physical pain, mental anguish, medical expenses, and all damages recoverable under Maryland law, including those authorized under Md. Code, Est. & Trusts § 7-401(y), which permits a personal representative to prosecute, defend, or compromise any action that the decedent could have maintained, and Md. Code, Cts. & Jud. Proc. § 6-401(a), which provides for the survival of causes of action for the recovery of damages for injury to the person, arising out of and resulting from the death of Mr. Walker.

296.    Defendants are liable for such damages as would have been recoverable by Decedent, Mr. Walker, had he survived, including but not limited to conscious pain and suffering, loss of dignity, emotional distress, medical expenses, funeral expenses, and all damages awardable pursuant to common law and applicable Maryland law. This Count is derivative of the negligence count and not a stand-alone claim or independent tort.

**WHEREFORE,** Plaintiff Tayona Lena Victoria Walker, Personal Representative of the Estate of Donta Walker demands judgment against Defendant Correct Rx Pharmacy Services, Inc., jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

Respectfully submitted,

**PRICE BENOWITZ, LLP**

By:    */s/ Arren T. Waldrep*
Arren T. Waldrep, Esq. (Bar #14924)
409 7th Street, N.W., Suite 200
Washington, D.C. 20004
Phone: (202) 417-6000
Facsimile: (301) 244-6659
Arren@pricebenowitzlaw.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

By:    */s/ Arren T. Waldrep*
Arren T. Waldrep, Esq.

## RULE 1-313 CERTIFICATE

I certify that I am admitted to the practice of law in the State of Maryland, that my Maryland bar status is current and active, and that my District of Columbia office is located at the address listed above.

Date:   October 17, 2025      By:    */s/ Arren T. Waldrep*
Arren T. Waldrep, Esq.