IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONTA TAYLOR, *et al.*,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-25-03447** |
| | * | |
| **MARYLAND DEPARTMENT OF** | * | |
| **PUBLIC SAFETY AND CORRECTIONAL** | * | |
| **SERVICES, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Donta Taylor and Tayona Lena Victoria Walker, individually and as the Personal Representative of the Estate of Donta Walker (collectively "Plaintiffs")[1] have sued twenty defendants alleging claims arising out of the death of Donta Walker ("Walker") while he was incarcerated at the Maryland Correctional Institution – Jessup. ECF 1. Four motions are presently ripe for disposition: (1) a motion to dismiss filed by Defendant Correct Rx Pharmacy Services, Inc. ("Correct Rx"), ECF 16; (2) a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS"), Robert Dean, Geneva Holland, Keith Dickens, Sharon Baucom, Adaora Odunze, Olayinka Ukim, and Kevin Hight (collectively, "State Defendants"), ECF 22; (3) a motion to dismiss filed by Defendant Jacques Kemegne, ECF 37; and (4) a Motion to Stay filed by Plaintiffs, ECF 62. This Court has reviewed those motions and the oppositions and replies. ECF 17, 20, 23, 25, 38, 39, 40, 45, 63, 64, 65, 66. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that

---

[1] There are also two named Use Plaintiffs, "To the Use of Martha Taylor" and "To the Use of Edward Walker." ECF 1.

follow, Plaintiffs' motion to stay will be denied without prejudice, Correct Rx's motion to dismiss will be denied, the State Defendants' motion will be granted in part and denied in part, and Kemegne's motion will be granted.

## I.    FACTUAL BACKGROUND

The following facts are derived from the Complaint, ECF 1, and assumed to be true for purposes of adjudicating this motion.[2] At all times relevant to the Complaint, Walker was incarcerated at the Jessup Facility. *Id.* ¶ 33. Defendants YesCare Corporation, CHS TX, Inc. d/b/a YesCare, and YesCare MD, LLC (collectively "YesCare") managed the infirmary at the facility. *Id.*

Walker suffered from asthma. *Id.* ¶ 34. Before his death in October, 2022, he had last received a refill of his controller inhaler on June 29, 2022. *Id.* ¶ 42. He submitted sick call slips in July and September, 2022, but YesCare staff failed to follow up. *Id.*

On or about October 18, 2022, Walker experienced difficulty breathing. *Id.* ¶ 34. He sought medical assistance three times from infirmary personnel and "explicitly begged medical staff" to transfer him to a hospital for treatment. *Id.* ¶¶ 34–35. He was not transferred. *Id.* ¶ 35. Plaintiffs assert "[u]pon information and belief" that "Defendants failed to document vital signs, monitor respiratory function, or conduct peak flow measurements" when treating Walker. *Id.* ¶ 40. Instead, he suffered fatal respiratory distress in his cell and passed away at the Jessup Facility. *Id.* ¶ 36.

Plaintiffs assert, "[u]pon information and belief," that Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, and Adaora Odunze "were responsible for the administrative management and oversight of the Jessup Facility." *Id.* ¶ 38. They also assert

---

[2] The Complaint is 107 pages in length, nearly tripling the allowable length prescribed in Local Rule 103.1(d). This Court will review only the facts relevant to the pending motions.

"[u]pon information and belief" that Defendant Ukim "exercised direct responsibility for reviewing chronic-care rosters, authorizing medication refills, and approving emergency transfers for detainees with known respiratory conditions, including asthma." *Id.* ¶ 45.

Plaintiffs allege, also "[u]pon information and belief," that Defendants Dean, Holland, and Dickens "exercise direct supervisory authority over correctional operations, including coordination with medical staff during inmate medical emergencies." *Id.* ¶ 53. They also allege that "Defendant Hight, as a Lieutenant and shift supervisor at the Jessup Facility, was responsible for reviewing and documenting serious medical or security incidents involving detainee health emergencies" and authored the report following Walker's collapse and death. *Id.* ¶¶ 54–55.

Plaintiffs allege that Defendant Kemegne was a Correctional Officer II and that he "personally participated in CPR" and "had custody interaction with Mr. Walker that morning" and "failed to summon timely medical intervention despite visible signs of distress." *Id.* ¶ 71.

## II.    MOTION TO STAY

This Court begins with Plaintiffs' motion to stay, ECF 62. On May 12, 2026, this Court entered an order staying the proceedings against YesCare only, following a Suggestion of Bankruptcy filed by YesCare's counsel. ECF 59. Plaintiffs' motion seeks to stay the case in its entirety, arguing that allowing the case to proceed against the non-bankrupt defendants while the claims against YesCare are stayed creates a risk of inconsistent judgments, duplicative litigation, and prejudice. ECF 62.

This Court sees no risk, at present, to continuing with these early stages of the proceedings involving the non-bankrupt defendants. Several defendants have motions ripe for disposition. Discovery has not yet commenced because a small number of defendants either have not been

served or have not timely filed a response after service.[3] And at least one defendant has filed a motion to dismiss, which is awaiting full briefing. All of those steps will need to be completed regardless of YesCare's bankruptcy and have potential to narrow the scope of this case as it awaits eventual resolution. Any concerns regarding the potential for duplicative litigation, inconsistent judgments, and prejudice are not yet ripe.

Thus, this Court will deny the motion to stay the case in its entirety, ECF 62, without prejudice to its renewal once the case is ready for a scheduling order and ensuing discovery.

### III.    MOTIONS TO DISMISS

Defendants' pending motions to dismiss cite two provisions: Rule 12(b)(1) and Rule 12(b)(6). Rule 12(b)(1) governs situations where the Court lacks subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Under that rule, the plaintiffs bear the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is

---

[3] To further the progress of the litigation, Plaintiffs should review the docket and ascertain whether it would now be appropriate to seek entry of default against any non-responding defendants. They should also keep this Court apprised of efforts to serve the remaining named defendants.

assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

5

in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### A. CORRECT RX's MOTION

Correct Rx's motion to dismiss is jurisdiction-based. ECF 16. Correct Rx argues that the claim against it is a negligence claim and that, because its alleged conduct is entirely distinct from the claims against the other defendants, this Court should not exercise supplemental jurisdiction over the state law claim against it. Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" over state claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c). The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Those considerations weigh in favor of an exercise of supplemental jurisdiction here, because the claims against Correct Rx are not entirely distinct from other claims relating to a failure

to monitor Walker's prescription history to ensure adequate medical care. It is true, of course, that the adjudication of this case might be somewhat slowed by YesCare's bankruptcy. But Plaintiffs' basic allegation is that Walker "was deprived of essential asthma treatment, leading to progressive worsening of his respiratory condition and, ultimately, his preventable and wrongful death." ECF 1 ¶ 272. Adjudicating the case against Correct Rx separately from the case against the medical defendants could risk inconsistent factual findings. For example, if Plaintiffs are able to prove that Walker did not receive his medication timely, the medical defendants and Correct Rx could implicate one another regarding the failure to provide his prescribed medication. It is in the interest of judicial economy and fairness to allow the claims to proceed together and be resolved with a single factfinder, and there is no meaningful difference with respect to convenience or comity weighing in favor of some claims proceeding in state court. Correct Rx's motion to dismiss will be denied.

### B. THE STATE DEFENDANTS' MOTION

The State Defendants' motion is styled as a motion to dismiss or, in the alternative, for summary judgment, and they have submitted external evidence in support of their motion. ECF 22. Plaintiffs' counsel filed a Rule 56(d) declaration specifically listing categories of documents he would seek in discovery relevant to the questions before this Court. ECF 38-3. In light of the declaration, this Court declines to consider the motion as a motion for summary judgment before discovery and will evaluate the motion under the Rule 12(b)(6) standard.

#### 1. Official Capacity Claims

The State Defendants seek to dismiss any claims against them in their official capacities. ECF 22. Plaintiffs do not contest that such claims would be barred by the Eleventh Amendment but counter that they have not sued the State Defendants in their official capacities. ECF 38-1 at

7

10. However, Plaintiffs' complaint contains inconsistent representations regarding their intent to sue the Defendants in their official capacities. *Compare* ECF 1 ¶ 26 *with* ECF 1 ¶¶ 73, 85, 195, 221. Ultimately, to the extent Plaintiffs have asserted any claims against the State Defendants in their official capacities, those claims are dismissed on Eleventh Amendment grounds.

2. **Section 1983 Constitutional Claims (Counts I and II, Deliberate Indifference)**

After review of the State Defendants' motion, Plaintiffs do not oppose dismissal of two of the individual State Defendants: Sharon Baucom and Geneva Holland. The remaining State Defendants are DPSCS, Dean, Dickens, Odunze, Ukim, and Hight. In the § 1983 context, "masters do not answer for the torts of their servants," and there is no *respondeat superior* liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Thus, to state a § 1983 claim for violation of constitutional rights, Plaintiffs must allege sufficient facts to show that each defendant either "acted personally in the deprivation of the plaintiffs' rights," *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971)), or engaged in "supervisory actions that violated constitutional norms." *Timpson by and through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022). Each theory is addressed below.

a. **Personal Participation**

Plaintiffs simply have not alleged personal participation by any of the individual State Defendants in the provision of medical care to Walker. None of the individual State Defendants worked as doctors or medical professionals, and they rendered no care. Instead, Plaintiffs allege that Dean, Dickens, Odunze and Ukim exercised "decision-making authority over institutional systems governing medical access, chronic-care monitoring, emergency escalation, and coordination between custody and medical staff." ECF 38-1 at 12. And with respect to Hight,

Plaintiffs' Complaint alleges only that he authored the Serious Incident Report after Walker's death, rendering it impossible for his actions to have caused the injury Walker sustained. ECF 1 ¶ 54.

To suggest that their factual allegations are sufficient, Plaintiffs' opposition to Defendants' motion employs a nonexistent legal standard for "personal participation," citing to two Fourth Circuit cases that do not discuss, in any way, a standard for personal participation in constitutional violations.[4] *See* ECF 38-1 at 12 (citing *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), and *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990)). Contrary to Plaintiffs' imaginary legal standard, "acted personally in the deprivation of the plaintiffs' rights" means what it says. In the absence of any allegations that any of the State Defendants interacted with Walker's medical team, made any decisions about the medical care he would receive, or provided care to him prior to his death, Plaintiffs have not alleged the personal participation of Dean, Dickens, Odunze, Ukim or Hight in any constitutional violation that may have occurred.

### b. Supervisory Liability

Plaintiffs also have not pleaded sufficient facts to establish any of the individual State Defendants' supervisory liability. The first required element is a defendant's "actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury." *Shaw*, 13 F.3d at 799. Dean was the Warden of the Jessup Facility. Dickens was its Chief of Security. Ukim was its Associate Chief of Medicine. Odunze was Director of Nursing Services. Hight was a Correctional Officer. There are no allegations about who any of their subordinates were, what conduct by those subordinates posed a

---

[4] Whether these hallucinated citations result from use of generative AI or simply sloppy lawyering, they will not be countenanced in future filings in this case.

pervasive or unreasonable risk of constitutional injury, or how the defendants had actual or constructive knowledge of their subordinates' conduct.

Instead, Plaintiffs rely exclusively on "information and belief" and vague group pleading to conclusorily suggest that some oversight responsibility over the prison facility is enough. It is not. Moreover, Plaintiffs again cite cases in support of a proposition for which they do not stand. *See* ECF 38-1 (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) and *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) for the assertion that "The Fourth Circuit has long recognized that non-medical supervisory officials may be liable where they know of and disregard systemic failures in medical care, including failures in coordination, escalation, or oversight."). *Farmer* is a case about inmate assaults, not provision of medical care, and *Miltier* emphasized the degree of direct supervisory involvement needed to establish § 1983 liability.

Finally, even if the individual State Defendants could be responsible under the respondeat superior-type theory they are asserting (and the law suggests they cannot), Plaintiffs have not alleged sufficient facts to plausibly state a claim. Conclusory allegations regarding "past incidents," without any specifics or numbers of incidents attached, do not show the type of "pervasive or unreasonable risk" required to plead supervisory liability. The § 1983 claims against the individual State Defendants must be dismissed.

3. **Rehabilitation Act/Americans with Disabilities Act ("ADA") (Counts III – VI)**

These claims are brought against Defendant DPSCS alleging that Walker was discriminatorily deprived of benefits afforded to other inmates. To state a viable claim under the Rehabilitation Act or ADA, Plaintiffs must plausibly allege (1) that Walker was a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against; and (3)

that such exclusion, denial, or discrimination occurred because of his disability. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).

The parties do not dispute, and Plaintiffs have alleged, that Walker suffered from chronic asthma. The pertinent question is whether Plaintiffs have alleged that DPSCS denied him the benefits of its services, programs, and activities on the basis of that disability. Plaintiffs allege that DPSCS excluded inmates with asthma from participation in and benefits of the prison's adequate medical services by (1) classifying asthma-related refill requests as routine rather than urgent, (2) failing to ensure access to rescue inhalers during lockdowns, and (3) requiring non-emergency sick-call procedures for acute respiratory distress. ECF 1 ¶ 102.

The State Defendants aptly note that Plaintiffs' ADA/Rehabilitation Act claim repeatedly strays into what appears to be discussion of inadequate provision of medical treatment as opposed to disability discrimination. But at this early stage and given the low bar applicable to a motion to dismiss, Plaintiffs' allegation that DPSCS maintained specific asthma-related policies that hindered inmates with asthma and respiratory conditions from receiving timely and adequate care suffices to state a disability discrimination claim.

### 4. State Constitutional Claims (Counts VIII, X)

Plaintiffs' state constitutional claims under Article 16 of the Maryland Declaration of Rights, which prohibits laws "to inflict cruel and unusual pains and penalties," are typically construed *in pari materia* with their federal Eighth Amendment counterparts. *See Wallace v. Moyer*, Civ. No. CCB-17-3718, 2020 WL 1506343, at *9 (D. Md. Mar. 30, 2020) (citing *Brooks v. State*, 104 Md. App. 203, 213 n.2 (1995)). While Plaintiffs contend that there are instances when the state constitutional provisions should not be interpreted in the same manner, ECF 38-1 at 24, they do not specifically identify what about this case distinguishes their state Article 16 claims

from their Eighth Amendment claims. For the reasons described above, Plaintiffs have not alleged the State Defendants' involvement in deliberately indifferent provision of medical care and certainly have not alleged facts suggesting that any of the State Defendants acted with the gross negligence or actual malice needed to defeat immunity. *See Boyer v. State*, 323 Md. 558, 579–80 (1991). Plaintiffs' state constitutional claims are also subject to dismissal, meaning that all of the claims against the individual State Defendants will be dismissed without prejudice.

### C.  KEMEGNE'S MOTION

Like the State Defendants' motion, Kemegne's motion is styled as a motion to dismiss or, in the alternative, for summary judgment. ECF 37. Kemegne asks this Court to consider external evidence in support of his motion. As with the State Defendants' motion, Plaintiffs' counsel filed a Rule 56(d) declaration specifically listing categories of documents he would seek in discovery relevant to the questions before this Court. ECF 39-3. In light of the declaration, this Court declines to consider the motion as a motion for summary judgment before discovery and will evaluate the motion under the Rule 12(b)(6) standard.

Plaintiffs' complaint asserts state and federal constitutional claims against Kemegne. But the sparse factual allegations relating to Kemegne's participation on the day of Walker's death do not suffice to state either type of claim. A claim for deliberate indifference to an incarcerated person's serious medical needs requires two elements. First, the plaintiff must allege a serious medical need, either diagnosed by a physician as requiring treatment or so obvious that even a layperson would recognize the need for medical attention. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Second, the plaintiff must allege that the defendant actually knew of the facts giving rise to a risk of serious harm and consciously disregarded the risk. *Id.*

Here, Plaintiffs have alleged neither. As described above, the factual allegations against the correctional officer defendants, including Kemegne, are quite sparse. The Complaint alleges only that the correctional officers "personally participated in CPR" and "had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress." ECF 1 ¶ 71. Reference to "visible signs of distress" does not demonstrate either the existence of a serious medical need or Kemegne's knowledge of it. "Distress" can describe a number of things, to include emotional upset for non-medical reasons. Plaintiffs do not allege what Kemegne saw or why he should have recognized Walker's serious medical condition. And Kemegne's personal participation in CPR suggests that he provided assistance to Walker when he needed it, not that he denied him medical treatment or disregarded his medical needs. Certainly, the minimal allegations in the Complaint do not allow any plausible inference of gross negligence or actual malice as would be required to overcome immunity for a state constitutional claim. *See Boyer*, 323 Md. at 579–80. In sum, Plaintiffs' allegations against Kemegne do not include sufficient facts to plausibly state any of the claims they allege. The claims against him will be dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion to stay, ECF 62, will be denied without prejudice, Correct Rx's motion to dismiss, ECF 16, will be denied, the State Defendants' motion, ECF 22, will be treated as a motion to dismiss and granted in part as to the individual State Defendants and denied in part as to DPSCS, and Kemegne's motion, ECF 37, will be treated as a motion to dismiss and granted. A separate implementing Order is filed herewith.

Dated:  July 27, 2026

_____/s/_____
Stephanie A. Gallagher
United States District Judge

13